**Cochyese GRIFFIN et al., Plaintiffs,**

**v.**

**STATE BOARD OF EDUCATION et al., Defendants.**

**Civ. A. No. 4075**

United States District Court
E. D. Virginia,
at Richmond.

Argued Dec. 14, 1964.

Decided March 9, 1965.

S. W. Tucker and Henry L. Marsh, III, Richmond, Va., for plaintiffs.

William L. Marbury, Sp. Asst. Atty. Gen. of Va., Baltimore, Md., Robert Y. Button, Atty. Gen. of Va., R. D. McIllwaine, III, Asst. Atty. Gen. of Va., Frederick T. Gray, Sp. Asst. Atty. Gen. of Va., Richmond, Va., and Lewis A. Noonberg, Baltimore, Md., for defendants, State Bd. of Education of Commonwealth of Va. and Woodrow W. Wilkerson, Supt. of Public Instruction.

J. Segar Gravatt, Blackstone, Va., as Sp. Counsel and Thomas Stark, III, Commonwealth's Atty. for Amelia County, Amelia, Va., for defendant, Bd. of Supervisors of Amelia County.

J. Segar Gravatt, Blackstone, Va., as Sp. Counsel and L. J. Hammack, Jr., Commonwealth's Atty. for Brunswick County, Lawrenceville, Va., for defendant, Bd. of Supervisors of Brunswick County.

Paul D. Summers, Jr., City Atty., Charlottesville, Va., for defendant, Council of City of Charlottesville.

Douglas S. Mitchell, Commonwealth's Atty. for King and Queen County, West Point, Va., for defendant, Bd. of Supervisors of King and Queen County.

Leonard H. Davis, City Atty., and W. R. C. Cocke, Norfolk, Va., for defendant, Council of City of Norfolk.

J. Segar Gravatt, Blackstone, Va., as Sp. Counsel, and William R. Blandford, Commonwealth's Atty. for Powhatan County, Powhatan, Va., for defendant, Bd. of Supervisors of Powhatan County.

J. Segar Gravatt, Blackstone, Va., as Sp. Counsel, and William F. Watkins, Jr., Commonwealth's Atty., for Prince Edward County, Farmville, Va., for defendant, Bd. of Supervisors of Prince Edward County.

J. Segar Gravatt, Blackstone, Va., as Sp. Counsel, and Ernest W. Goodrich, Commonwealth's Atty., for Surry County, Surry, Va., for defendant, Bd. of Supervisors of Surry County.

J. Segar Gravatt, Blackstone, Va., as Sp. Counsel, and John F. Ewell, Com-

monwealth's Atty., for Warren County, Front Royal, Va., for defendant, Bd. of Supervisors of Warren County.

D. B. Marshall, Charlottesville, Va., and Geo. Stephen Leonard, Washington, D. C., for intervenors, E. J. Martin and others.

Before BRYAN, Circuit Judge, and HOFFMAN and BUTZNER, District Judges.

ALBERT V. BRYAN, Circuit Judge:

Upon consideration of the Virginia school tuition grant laws, we hold: (1) that they are not unconstitutional on their face, as fostering forbidden race distinctions; (2) that the grants may lawfully be used in a private, segregated, non-sectarian school if they do not constitute the preponderant financial support of the schools; but (3) if the grants are paid by the governmental authorities knowing the funds will be used to provide the whole or the greater part of the cost of operation of a segregated school, as it is in each of the private schools described in the complaint, then such disbursement of public moneys is impermissible.

We, therefore, refuse the requested general invalidation of the laws; but we shall order that, after the expiration of the current school year, the further payment of the grants for use in the ineligible schools shall be suspended so long as they maintain segregation.

Plaintiffs are Negro pupils and parents whose capacity and standing to sue, as presently, for vindication of rights secured by the equal protection and due process clauses of the Fourteenth Amendment are indisputable. Specifically, the attack is aimed at the Virginia constitution's authorization of tuition grants and at the implementing statutes. Several of the latter which were originally questioned have since been repealed.[1] The Constitutional section, as amended in 1956, now reads:

"§ 141. State appropriations prohibited to schools or institutions of learning not owned or exclusively controlled by the State or some subdivision thereof; exceptions to rule. —No appropriation of public funds shall be made to any school or institution of learning not owned or exclusively controlled by the State or some political subdivision thereof; *provided,* * * * *that the General Assembly may, and the governing bodies of the several counties, cities and towns may, subject to such limitations as may be imposed by the General Assembly, appropriate funds for educational purposes which may be expended in furtherance of elementary, secondary, collegiate or graduate education of Virginia students in public and nonsectarian private schools and institutions of learning, in addition to those owned or exclusively controlled by the State or any such county, city or town;* * * *.*" (Accent added.)

Our discussion commences with the tuition grant plan as reconstructed and existing in 1960. By then the so-called "massive resistance" had been abandoned and the "freedom of choice" program begun. The change is recognized in Griffin v. School Board, 377 U.S. 218, 223, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), where a concise but comprehensive history of the prior State policy is also found. The Constitutional clause just quoted, with the statutes presently to be summarized (together comprising the Virginia law), constitute the current pertinent tuition provisions. We are only concerned with the application of the law to a private school, that

1. A complete list of all those attacked is as follows: § 141 Va. Constitution; Code of Virginia, 1950, as amended, § 22–21.1; §§ 22–115.29 through 22–115.37; § 22–159; § 23–38.1; §§ 51–111.38:1 through 51–111.38:3; §§ 58–19.1 through 58–19.5.

All the statutes were repealed at the Extra Session of the Legislature in November 1964, except §§ 22–115.29 through 22–115.35 and §§ 51–111.38:1 through 51–111.38:3.

is a school not sectarian and not compelled by law to avoid segregation.

I. Summarized, the present Virginia law authorizes the appropriation of moneys for educational purposes in "nonsectarian private schools and institutions of learning, in addition to those owned or exclusively controlled by the State or any * * * county, city or town". To this end "[e]very child in this Commonwealth between the ages of six and twenty who has not finished or graduated from high school, and who desires to attend a nonsectarian private school located in or outside, or a public school located outside, the locality in which such child resides shall be eligible and entitled to receive a State scholarship * * * "

The amount is fixed at $125 per school year for elementary and $150 for high school students. This money comes from the State treasury. In addition, each locality may pay to "every" such child an amount equal to that provided by the State. If a local scholarship, however, is not established the State must provide it, but only out of State moneys receivable by the locality for other than educational purposes. In no event may the total of the State and local grants exceed the actual tuition payable at the chosen school or the cost per pupil of education in the public schools of his residence. No grant may be used except for tuition.[2]

Obviously, no distinction in eligibility of recipients is here made on account of race. Indeed, no proof of such denial of the privilege has been attempted.

The State Board of Education, as empowered and directed by the law, has adopted regulations for the payment of the scholarships. These rules prescribe only academic standards—the minimum —which a selected school must meet. The State has no part in the selection of the school, its admission policies or its operation. A grant is not obtainable until the applicant has been accepted and enrolled in the school desired. Of course, at that time the school will be aware, or can readily become aware through inquiry of his parent or guardian before acceptance, that he is a scholarship-aided entrant.

With the plaintiffs, we think the State cannot ignore any plain misuse to which a grant has been or is intended to be put. Nor do we think weight is to be accorded the fact that the money is paid to the pupil or parent and not to the school, for the pupil or parent is a mere channel. Cf. Almond v. Day, 197 Va. 419, 89 S.E.2d 851, 857 (1955). These premises of decision have especial significance here because the issue is the right of the State or locality to make, and not the right of the pupils, parents or schools to take, the grants.

Nevertheless, save where the plan is subverted, after the grant has been released, the touch of the State with the child's education in the private school ends. Under the permissible administration of the plan, the mere acceptance of the money by the institution does not transform it into a Virginia instrumentality.

After matriculation of the child, the only possible remaining contact which the State may be said to have with the private school is through a general pension plan made available to all teachers. Established by § 51–111.38:1 of the Code, as amended, the outline of the plan is as follows:

"Any corporation * * * providing elementary or secondary education may by resolution duly adopted by its board of directors and approved by the Board of Trustees of the Virginia Supplemental Retirement System elect to have teachers employed by it become eligible to participate in the retirement system. Acceptance of the teachers employed by such an employer for membership in the retirement system shall be optional with the Board and if it shall approve their participation, then such teachers, as members of the retirement system,

2. These statutes appear as §§ 22–115.30 through 22–115.35, Va.Code of 1950, as amended.

shall participate therein as provided in the provisions of this chapter."

Accordingly, teachers of any private school corporation anywhere may be accepted in the State retirement system. Membership is mutually *optional*. Section 51–111.38:3 demands that the corporation pay to the State Treasurer a contribution fixed in accordance with a general statutory scheme and including the pro rata administration cost of each teacher. Thus, the State remains no more than a custodian or administrator. The Retirement Trustees have no say in the management of the school corporation.

■ While, presumably, a teacher would not apply or be received unless he taught in a school in which a Virginia-grant child was registered, we think the teacher's *option* to join does not bring him into the State's school system. Nor does the privilege give the teacher the character of a State employee—just as the opportunity to take part in the Social Security program of the United States does not turn an eligible contributor into a Federal employee.

■ Although attack upon the tuition plan is also mounted upon the ground that in providing and distributing the grants the defendants are expending tax moneys for non-public uses, and thus without due process of law, there is no justification for the sally. The plan is an open, unmasked appropriation and disbursement of public moneys for a legitimate public function, without reference to race. Cf. Everson v. Board of Education, 330 U.S. 1, 17, 67 S.Ct. 504, 91 L.Ed. 711 (1947); Cochran v. Louisiana State Board of Education, 281 U.S. 370, 50 S. Ct. 335, 74 L.Ed. 913 (1930). It must be acknowledged that a parent may be prompted to pick a private school by many reasons other than race considerations. State aid of this preference does not in itself evidence racial discrimination.

■ Absence of equal protection of the laws is asserted in the contention that there is inequality of enjoyment of the grants. This contention—which is also pressed to destroy the "freedom of choice" label of the plan—is based on the averment that the Negro has no private school available to him for use of the tuition. The answer is at least twofold. Initially, there is no proof that private schools are not at hand where the Negro may use the money. Next, such a result would not be the fault of the law; it is an economic, not a constitutional obstruction.

■ Over-all, the ultimate and inescapable upshot of the plaintiffs' argument is that the State may not provide education except in schools where segregation is proscribed by law or school policy. Not in logic or in precedent do we find the position upheld. Neither Griffin v. School Board, supra, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256, nor Griffin et al. v. Board of Supervisors, 339 F.2d 486 (4 Cir. 1964) points that way. Decision in each instance was strictly confined to the circumstances peculiar to Prince Edward County and Surry County. Quite clearly, the Courts ventured no expression upon the universal validity of the Virginia tuition law. In sum, the Virginia law of tuition grants is, in our judgment, an unexceptionable program when indiscriminately administered.

II. While in the abstract tuition grants are not condemnable, they may become so if misdirected. This is the accusation trained by the plaintiffs upon the distribution of tuition grants for use in the private schools described in the complaint, that is: Prince Edward County Educational Foundation; Rockhill Academy and Robert E. Lee School both in Charlottesville; John S. Mosby Academy in Warren County; the Huguenot Academy in Powhatan County; the Surry County Educational Foundation; the York Academy in King and Queen County; the Tidewater Academy, now Douglas MacArthur Academy, in Norfolk; the Amelia Educational Foundation in Amelia County; and the Brunswick Academy Association, Inc. in Brunswick County.

The general criterion by which we must determine whether a grant or grants are legitimately appropriated is, on our analysis, this:

■ Payment of a tuition grant for use in a private school is legal if it does not tend in a determinative degree to perpetuate segregation. The test is not the policy of the school, but the measure in which the grant or grants contribute to effect the exclusion on account of race. Every exclusive school is not a forbidden school. The part played by the grant in effectuating the exclusion, to repeat, is the pivotal point. It is decisive because the extent of such participation determines whether or not the exclusion is State action—the fundamental question here. Absent the reach of the State, of course no Fourteenth Amendment abridgment is suggested. Peterson v. Greenville, 373 U.S. 244, 247, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963).

■ This gauge, we think, does not deviate from the teaching of Cooper v. Aaron, 358 U.S. 1, 4, 19, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958). An uncontrolling financial contribution to a private school through a State grant would not be, in our interpretation, "to use [the State's] governmental powers to bar children on racial grounds from attending schools where there is state participation through any arrangement, management, funds or property". In our test, State involvement cannot be dominant. Nor would the use we deem permissive constitute the "support" frowned upon by the Court, for the schools would not be "maintained" by such incidental use.

■ Application of the standard we suggest would give these specific results:

1. Grants for use in an exclusively "white" school within or without Virginia would not be disallowed if the money only insubstantially contributed to the running of the school. If the ratio of the amount of the grant to the cost of maintenance and operation is relatively low, the tendency of the grant to affect the character of the school in law is correspondingly slight. For examples: $250 or $275, the amount of a grant, might be but a meagre part of the tuition paid in many private schools, and, again, the presence of a relatively few scholarship children among a student body of several hundred would mean that the Virginia money was no more than a minim of support.

2. On the other hand, if the private school is the creature of, or is preponderantly maintained by, the grants, then the operation of the school is State action, and payment of the grants therefor is a circumvention of the equal protection clause of the Constitution. This was the major premise upon which the Supreme Court and the Court of Appeals of the Fourth Circuit, respectively, in Griffin v. School Board, supra, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256; Griffin et al. v. Board of Supervisors, supra, 339 F.2d 486 (4 Cir. 1964), held the tuition grants not permissibly payable to the Prince Edward County Foundation or the Surry County Foundation.

■ III. Because, to repeat, the plaintiffs allege that tuition grants are illegally expended when, with knowledge of the defendants, the grants are used in the private schools referred to in the complaint, it becomes necessary to look at the source of the financial support of those schools. There we find, incontestably, that the grants are the main support of each of them. This contribution is of such relative magnitude that they plainly are State supported institutions. Thus the State is nurturing segregated schools. Hence, the defendants must be enjoined from providing money to be funnelled by the parents into these schools so long as segregation is practiced in them.

Our decision does not rest or depend upon the Civil Rights Act of 1964, 78 Stat. 241, 42 U.S.C.A. § 1971. But we would be remiss if we did not advert to its prohibition of segregation in State supported schools. The Act directs the Attorney General, on complaint that children have been denied admission to a

public school by reason of race or color "to initiate and maintain appropriate legal proceedings", to achieve desegregation of the school. § 407(a), 42 U.S.C.A. § 2000c–6(a). The statute contains this definition:

"(c) 'Public school' means any elementary or secondary educational institution, and 'public college' means any institution of higher education or any technical or vocational school above the secondary school level, provided that such public school or public college is operated by a State, subdivision of a State, or governmental agency within a State, or operated wholly or predominantly from or through the use of governmental funds or property, or funds or property derived from a governmental source." § 401(c), 42 U.S. C.A. § 2000c(c).

Consequently the complaint in this action cannot be read without the Civil Rights Act in mind, for, if not now enjoined, continued predominantly State or local governmental support of the private schools herein mentioned might expose some of the defendants to subsequent suit under that Act.

 It may be suggested that the validity of the tuition grants should not be adjudicated in this suit because the private schools are not parties to the litigation. The overriding answer is that no complaint is made against the schools themselves. The complaint is against the payers and not the ultimate recipients of the grant. It is the power to give, not the right to receive, which is in issue.

Private schools are in no wise outlawed by our decision. They have existed for centuries undominated by the State support, and no reason appears why they cannot still flourish without it. Furthermore, as we have already indicated, State grants may within certain limits still be paid for use in private schools although they adhere to a policy of segregation. Our determination is simply that the preponderant support of a segregated school may not be rooted in State action.

To avoid unnecessary disruption of the present classes, with consequent injury to the students, our injunction will read only against grants, whenever payable, for school sessions commencing after June 1965.

A decree in accordance with these views will follow.

### FINAL ORDER

Upon consideration of the pleadings, the stipulations of evidence and the arguments of counsel, on brief and orally, it is by the court, for the reasons set forth in its opinion this day filed, DECLARED, ADJUDGED, ORDERED and DECREED as follows:

1. That the provisions of the Constitution and statutes of the State of Virginia allowing and directing the payment of school tuition grants and designated more particularly as Section 141 of the Constitution of Virginia and Sections 22–115.29 to 22–115.35, inclusive, of the Code of Virginia, 1950, as amended, do not on their face contravene the Constitution of the United States, or any of the amendments thereto, and that the prayer of the complaint herein for a general injunction against the employment of said provisions of the Virginia Constitution and statutes be, and it is hereby, denied;

2. That the defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise be, and each of them is hereby, restrained and enjoined from the payment of said tuition grants for use in any school predominantly maintained by such tuition grants, including the private schools referred to in the complaint, so long as such school refuses to accept pupils on account of their race or color, provided, however, that this injunction shall not be effective in respect to the payment of tuition grants for use in the operation or maintenance of any of the said schools noted in the complaint

during the remainder of the current school term of 1964–65; and

3. That each party bear his own costs and that the prayer of the plaintiffs for counsel fees be denied; and

4. That jurisdiction of this cause be, and it is hereby, reserved by the court, and the case retained upon the docket, for such further action and entry of such additional orders as may be requisite or proper for the complete disposition of the matters here in controversy.