**Bryan POINDEXTER, a minor, by Lorraine Poindexter, his mother and next friend, et al., Plaintiffs,**

**v.**

**LOUISIANA FINANCIAL ASSISTANCE COMMISSION et al., Defendants.**

**Civ. A. No. 14683.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 3, 1966.

---

A. P. Tureaud, Ernest Morial, A. M. Trudeau, Jr., New Orleans, La., Charles H. Jones, Jr., New York City, for plaintiffs.

James E. Phillips, Jr., Baton Rouge, La., for Louisiana State Board of Education.

Frank L. Dobson, Baton Rouge, La., for St. Paul School.

Samuel I. Rosenberg, New Orleans, La., for Orleans Parish School Board.

Victor A. Sachse, C. C. Wood, Frank P. Simoneaux, Baton Rouge, La., Robert Brumby, Franklin, La., J. J. Davidson, Lafayette, La., for Louisiana Financial Assistance Commission.

Before WISDOM, Circuit Judge, and CHRISTENBERRY and AINSWORTH, District Judges.

WISDOM, Circuit Judge:

The plaintiffs attack the constitutionality of the Louisiana legislature's second attempt to use tuition grants to support so-called "private" schools for white children fleeing from desegregated public schools. On the first occasion this Court, observing "this is not the moment in history for a state to experiment with ignorance", held that the grant-in-aid program ran afoul of the equal protection clause. Hall v. St. Helena Parish School Board, E.D.La. 1961, 197 F.Supp. 649, aff'd per curiam, 1962, 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed. 2d 521.

The plaintiffs, Negro public school children in New Orleans and their parents, bring this class action under the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983, and under 28 U.S.C. § 1343 (3). A three-judge court was convened under 28 U.S.C. § 2281.

The theory of the complaint is that private schools largely supported by state grants are in reality a segregated public school system. The complaint asserts that this system is "only a continuation of the original scheme of, and a part of the public school system, designed and administered to maintain and perpetuate the separation of pupils by race and color." The Negro children allege that tuition grants are unavailable to them unless they attend segregated private schools; they were refused admission to three schools allegedly because of their race. This imposes upon them, they say, an unconstitutional condition. They have a choice of refusing tuition grants or accepting them for use within a segregated system.

The plaintiffs ask the court to enjoin [1] (1) the Louisiana Financial Assistance Commission and its members, (2) the Louisiana State Board of Education and its members, (3) the State Superintendent of Public Education, (4) the Orleans Parish School Board and its members, and (5) the Superintendent of the Orleans Parish School Board from the "enforcement, operation, and execution" of the tuition grant program as long as Negroes are excluded from subsidized schools on the basis of race or color. The complaint also named as defendants the Ninth Ward Elementary School, Armand J. Duvio, Director, the Carrollton Elementary School, and the Garden District Academy, the New Orleans schools which allegedly denied the plaintiffs admission because of their race. On motion of the plaintiffs, the court dismissed these parties from the suit as parties-defendant.

The defendants move for dismissal on the ground that the plaintiffs lack standing to challenge the constitutionality of

1. The prayer of the complaint asks the court to enjoin the defendants from: "a) continuing to enforce, operate, or execute certain statutes of the State of Louisiana providing for the disbursement of funds in the form of tuition grants, or grants-in-aid, which were enacted, and are presently administered, to maintain a separate segregated school system, such statutes being §§ 17:2951–2959 of the Louisiana Revised Statutes, and any other statutes of the State of Louisiana similarly enforcing or permitting such segregation. b) continuing to enforce the policy, practice, custom, and usage of supporting and maintaining a separate segregated school system, by making payments of tuition grants, or grants-in-aid, or disbursing, or in any way administering, monies to be made available to pupils, or their parents or guardians, for attendance at schools which exclude from their enrollment any students, otherwise eligible for said payments, on the basis of race or color."

the tuition grant program. In addition, the defendants contend that the case does not require a three-judge court since the complaint asks the court to enjoin only the unconstitutional application of the tuition grant statute and does not seek to have the statute itself declared unconstitutional. The Louisiana State Board of Education and the Orleans Parish School Board move for dismissal of the suit as to them on the ground that they have no connection with the tuition grant program. The Louisiana Financial Assistance Commission joins in their motion that the school boards be dismissed from the suit. We deny the defendants' motions.

## I.

Act 147 of 1962 (LSA–R.S. 17:2959) establishes a system of state tuition grants for children attending private non-sectarian elementary or secondary schools in Louisiana.[2] The statute creates the Louisiana Financial Assistance Commission to administer the program. The Commission makes tuition grants from the state funds directly to children attending the private schools or to their parents—but only if the school accepts the children. The applicants must furnish satisfactory evidence of admissi-

bility to a private non-sectarian school *"legally constituted and operated under the constitution and laws of the state"*. L.R.S. §§ 17:2955, subd. A(2) (a) and (c) (1963). The state allegedly pays $360 to each student attending private schools—but allocates only $257 a year for each student attending a public school in Orleans Parish. The 1962 financial assistance act authorized $200,000 a month for the program;[3] in 1963 the legislature increased this amount to $300,000 a month. The Commission has the power to prescribe qualifications for financial assistance, with certain limitations.[4] The statute is tied in with the public school system, in the sense that it requires that applicants must "[b]e eligible * * * for admission to elementary or secondary schools *within the public school system of the state of Louisiana"*.

The tuition grant program under attack is a refined, sophisticated substitute for the earlier grant-in-aid program, held unconstitutional in Hall v. St. Helena Parish School Board. The 1958 scheme was blatantly discriminatory state action: grants were available to parents and private schools only "where no racially segregated public school" was provided. In 1960 the Louisiana legis-

---

2. Act 10, 2nd Extraordinary Session of 1961, LSA–R.S. 47:318, as amended, supported by sales tax dedication to a fund administered by the Commission.

3. Among the powers enumerated in L.R.S. § 17:2955 are the following:

   B. To prescribe standards * * * for qualification for such financial assistance, which standards shall be as follows:

   Applicants must:

   * * * * *

   (3) Furnish satisfactory evidence of admissibility to a private non-sectarian elementary or secondary school in this state, legally constituted and operated under the Constitution and laws of the State of Louisiana.

   * * * * *

   D. To determine and pay the amount of the financial assistance to be made available to each applicant. * * *

   E. To prescribe standard forms of applications and related documentary evidence for financial assistance. * * *

* * * * *

   G. Upon approving the application for financial assistance the Commission shall issue its commitment in writing to the parent or guardian of, or person standing in loco parentis to, the applicant. * * *

* * * * *

   I. All payments made in accordance with any commitment issued by the Commission shall be by check to the parent or guardian of, or the person standing in loco parentis to, the applicant. The private non-sectarian elementary or secondary school attended shall furnish, upon forms prescribed by the Commission, as often as the Commission shall require it, sworn certificates, signed by the director or other appropriate official of said elementary or secondary school, showing the number of days actually attended by the applicant, and asssigning reasons for any reported absences.

4. LSA–R.S. 17:2906–16, repealed by Act 147 of 1962, § 11.

lature erased the *express* statutory racial restrictions, but preserved the substance of the program, including provisions for closing the public schools. The 1960 changes did not cure the constitutional vice: If the state was not "doing business at the old stand * * * [it was] participating as the senior, and not silent, partner in the same sort of business. The continuance of segregation at the state's public-private schools, therefore, is a violation of the equal protection clause". 197 F.Supp. at 655.

Act 147 of 1962 does away with provisions for closing public schools, transfers administration of the grant-in-aid program from the State Board of Education to the Financial Assistance Commission, and provides for grants to be made to the students and parents rather than directly to the private schools. Accordingly, the defendants contend that the statute is essentially different from the earlier statutes considered by this court; that it represents legislative acceptance of the decisions of this court and of the United States Supreme Court. The legislative theory of the law is that state aid to the school child is not aid to the school. Borden v. Louisiana State Board of Education, 1929, 168 La. 1005, 123 So. 655, 67 A. L.R. 1183, aff'd sub nom. Cochran v. Louisiana State Board of Education, 1930, 281 U.S. 370, 50 S.Ct. 335, 74 L.Ed. 913; Everson v. Board of Education of Ewing Township, 1947, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711.

## II.

The defendants' motion to dismiss the action for lack of standing rests on their analysis of the complaint as asserting only a state claim that belongs, if it belongs anywhere, in state courts. See *Borden v. Louisiana State Board of Education*, supra. As the defendants view it, the controversy is only over the disbursement of public funds for tuition. In support of their contention they point to the fact that the plaintiffs do not attack Act 147 as unconstitutional on its face. They point out, too, that the plaintiffs do not ask the court to integrate or

to close the private schools which accept students receiving grants. In short, so the defendants say, the plaintiffs' suit is nothing more than a taxpayer's suit to enjoin the state's unlawful expenditure of public funds for private purposes. Snowden v. Hughes, 1944, 321 U.S. 1, 6, 64 S.Ct. 397, 88 L.Ed. 497, 501; Dinwiddie v. Brown, 5 Cir.1956, 230 F.2d 465; Hanna v. Home Insurance Company, 5 Cir.1960, 281 F.2d 298.

The defendants' argument rests on a misunderstanding of the nature of the plaintiffs' rights. The plaintiffs are not suing as Louisiana taxpayers objecting to the legislature's violation of the State Constitution. They assert federal rights protected by the United States Constitution. As the plaintiffs couch their complaint, they are concerned only indirectly with the unlawful disbursement of state funds; their direct concern is that the state has established what in effect is a second state school system, one that is segregated. As the plaintiffs assert in their complaint, the grant-in-aid program "was created and is presently being administered as a scheme to allow pupils to avoid attending desegregated schools and to assist in the maintenance of a separate, racially segregated school system." The grants, as the plaintiffs contend, are a conduit between the state and the schools, the instrument for establishing and maintaining a second state system of schools. "[A] court would find it hard to ignore the fact that the effect of this [tuition grant system] in the South would be a public school system for Negroes and private schools for white children at state expense. * * If the purpose or effect of state aid to private schools is the maintenance of segregation, then the plan will be declared state action". Jansen, Private and State Action in School Segregation, 11 Loyola L.Rev. 92, 96 (1962).

State financial aid to private schools cannot be isolated from the context in which it is given. Here the disbursement of the funds is relevant for several reasons. First, the state's payment of tuition grants is state action. Second,

the stimulus of the funds in the founding of quasi-public schools and the use of the funds in the support of the schools bear on the question whether the schools should be treated as part of a state system of public or quasi-public schools. Third, an injunction against the disbursement of tuition grants is a reasonable and appropriate equitable remedy, should the court find that the system, as operated, is unconstitutional. Finally, we take judicial notice of the Civil Rights Act of 1964, 78 Stat. 241, 42 U.S.C. § 1971. This Act directs the Attorney General, on complaint that children have been denied admission to a public school by reason of race or color, "to initiate and maintain appropriate legal proceedings to achieve desegregation of the school. 42 U.S.C. § 2000c–6(a). The statute defines a *"public school"* as follows:

"(c) 'Public school' means any elementary or secondary educational institution, and 'public college' means any institution of higher education or any technical or vocational school above the secondary school level, provided that such public school or public college is operated by a State, subdivision of a State, or governmental agency within a State, or *operated wholly or predominantly from or through the use of governmental funds* or property, or funds or property derived from a governmental source." § 401(c), 42 U.S.C.A. § 2000c(c).

If the allegations in the complaint are found to be true, *all the so-called "private schools" in Louisiana operated "predominantly" with state tuition grants" are, by definition, "public schools"*.

There is a due process argument that public funds derived, at least in some part, from taxes paid by the plaintiff should not be appropriated to non-public purposes in deprivation of the plaintiffs' right to a desegregated state school system. A state appropriation to effect an unconstitutional purpose is a taking of property for a purpose not "public" within the requirement of the due process clause. The plaintiffs, however, emphasize the equal protection clause as

justifying their standing to sue. The state-supported "white" private schools deny them admission on the ground of race. Beyond that, so the plaintiffs argue, the very existence of a second and quasi-public school system endangers bona fide public schools and damages Negro pupils. It damages public schools by draining teachers, students, and funds into a competitive system. It tends to dilute the right of Negro children to attend integrated schools. It puts the stamp of state approval on the stigma of Negro inferiority, perpetuating the humiliation of Negroes implicit in segregated education. That, in substance, is the basis for the plaintiffs' suit.

In Griffin v. State Board of Education, E.D.Va.1965, 239 F.Supp. 560, Negro pupils and their parents attacked the Virginia system of tuition grants. The system is similar to Louisiana's. The Court rejected the argument that grants were aid only to the students, not to the schools. The Court adopted the same rule of thumb the Civil Rights Act adopted in determining what is a "public" school:

"[I]f the private school is the creature of, or is preponderantly maintained by, the grants, then the operation of the school is State action, and payment of the grants therefor is a circumvention of the equal protection clause of the Constitution. * * * Thus, the State is nurturing segregated schools." 239 F.Supp. at 565.

On the question of standing, the court held:

"Plaintiffs are Negro pupils and parents whose capacity and standing to sue, as presently, for vindication of rights secured by the equal protection and due process clauses of the Fourteenth Amendment are indisputable." 239 F.Supp. at 562.

Similarly, in Lee v. Macon County Board of Education, M.D.Ala.1964, 231 F.Supp. 743, the court held that "the use of the grant-in-aid statutes by the State of Alabama, through the payment of tuition grants for students enrolled in schools that discriminate upon the basis

of race or color is unconstitutional". 231 F.Supp. at 754. The court enjoined the Governor of Alabama, the State Superintendent of Education, the State Board of Education and its members from interfering with the county and city boards of education in desegregation throughout the State of Alabama. As in *Griffin* and in the instant case, Negro school-children and their parents brought the action.

The Civil Rights Act of 1964 adopts the rule of thumb that a school supported "predominantly" by the state grants should be treated as a "public school". *Griffin* too adopts this rule. A segregated school predominantly supported by state funds is an *a fortiori* case of unconstitutional state action. But any amount of state support to help found segregated schools or to help maintain such schools is sufficient to give standing to Negro school children to file the kind of complaint filed in this case.

In Cooper v. Aaron, 1958, 358 U.S. 1, 3, 78 S.Ct. 1401, 3 L.Ed.2d 5, the Supreme Court said:

"State support of segregated schools through any arrangement, management, funds or property cannot be squared with the command of the Fourteenth Amendment that no State shall deny to any person within its jurisdiction the equal protection of the laws."

In Simkins v. Moses H. Cone Memorial Hospital, 4 Cir.1963, 323 F.2d 959, cert. denied, 1964, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659, the Fourth Circuit held that a hospital's policy of racial exclusion was state action within the Fifth and Fourteenth Amendments' prohibitions against racial discrimination. Under the Hill-Burton Act the hospital had received from the Government seventeen per cent of the cost of two recent additions. And in Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45, the Supreme Court repeated the "broad test" in Cooper v. Aaron that "state responsibility * * * necessarily follow[s] upon '[any] state participation through any arrangement, management, funds or property' ". Burton v. Wilmington Parking Authority indicates that the required degree of control by the state is slight. 365 U.S. at 723, 81 S.Ct. at 860. A parking authority had constructed a public parking facility in which space was rented to a private "white" restaurant. The Supreme Court held that the parking authority, as landlord, exercised the requisite financial assistance and control to constitute state action. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance". See also Jansen, Private and State Action in School Segregation, 11 Loyola L.Rev. 92, 96 (1962); Comment, Public Control of Private Sectarian Institutions Receiving Public Funds, 63 Mich.L.Rev. 142 (1964); Note, 79 Harv. L.Rev. 841 (1966).

We hold that the plaintiffs have standing to sue, and to probe "the purpose, mechanics, and effect of the plan" in light of present constitutional standards. Hall v. St. Helena Parish School Board, 197 F.Supp. at 652. As we said in our examination of the earlier Louisiana grant-in-aid system:

"Irrespective of the express terms of a statute, particularly in the area of racial discrimination, courts must determine its purpose as well as its substance and effect. * * * '[A]cts generally lawful may become unlawful when done to accomplish an unlawful end.' Western Union Tel. Co. v. Foster, 247 U.S. 105, 114, 38 S.Ct. 438, 62 L.Ed. 1006." *Ibid.*

See also Gomillion v. Lightfoot, 1960, 364 U.S. 339, 81 S.Ct. 125, 4 L.Ed.2d 110; United States v. Louisiana, E.D.La.1963, 225 F.Supp. 353, aff'd 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709.

Nothing said in this opinion should be taken as an expression of the court's views on the merits or as justifying the filing of a motion for summary judgment. This case should be decided after a full trial on the facts. The extent to

which the tuition grants contributed to the founding of the quasi-public schools, in dollars and as a stimulus, the extent to which the grants now contribute to the support of the quasi-public schools, the extent of state involvement and control, and other factors relevant to state action can be determined only by a trial on the merits.

### III.

██ The convening of a three-judge court is proper in this case. 28 U.S.C. § 2281. Section 2281 specifies that this special court is necessary if the plaintiffs seek to restrain the "enforcement, execution, or operation" of a state "statute" or an "order" of a state administrative board or commission. The plaintiffs ask the court to enjoin the defendants and state officers from "enforcing" the legislative program as administered or as operated under certain Louisiana statutes. A "petition for injunction on the ground of the unconstitutionality of a statute *as applied* \* \* \* requires a three-judge court". Ex parte Bransford, 1940, 310 U.S. 354, 361, 60 S.Ct. 947, 950, 84 L.Ed. 1249. Here the complaint does not just seek to restrain unlawful executive action; here the legislative policy is under attack: "The crux of the business [use of a three-judge court] is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. This was the aim of Congress and is the reconciling principle of the cases." Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800. See Hall v. St. Helena, 197 F.Supp. at 658–659 in which a three-judge court enjoined the closing of schools under the earlier statute giving local school boards the authority to suspend or close public schools. See also Herkness v. Irion, 1928, 278 U.S. 92, 49 S.Ct. 40, 73 L.Ed. 198 in which the Supreme Court rejected the district court's distinction between an allegation of unconstitutional action on the part of state officers as opposed to allegation of the unconstitutionality of the statute under which they acted.

██ The constitutional contention is substantial. The plaintiffs need not conclusively demonstrate in the complaint the unconstitutionality of the statutes or their application. "For jurisdictional purposes it suffices that a substantial claim of deprivation has been made." Bush v. Orleans Parish School Board, E.D.La.1960, 188 F.Supp. 916, 922.

### IV.

██ The Louisiana State Board of Education and the Orleans Parish School Board move for dismissal of the complaint as to them on the ground of misjoinder. Fed.R.Civ.Proc., Rules 12(b) (2), 21. These defendants assert that they have nothing whatever to do with the administration of the tuition grant program. They concede that they have statutory responsibility for administering public schools; they disclaim any connection with the administration or payment of tuition grants to private schools under the 1962 financial assistance laws.

The test for permissive joinder of parties is stated in Rule 20(a) of the Federal Rules of Civil Procedure.[5] The "same transaction" and "common question" tests must both be met for joinder to be

---

5. "(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities. As amended Feb. 28, 1966, eff. July 1, 1966."

proper. 2 Barron & Holtzoff, Federal Practice and Procedure § 533, at p. 184 (Wright ed. 1961). In this case, the plaintiffs allege that the school boards, as well as the Financial Assistance Commission, are involved in "continuing to enforce the policy, practice, custom, and usage of supporting and maintaining a separate segregated school system. * * * " Therefore, say the plaintiffs, the school boards are at least proper parties to a suit testing the constitutionality of the statutes authorizing the present grant-in-aid system.

The school boards assert that they have no direct connection with the current grant-in-aid program. The state constitution now distinguishes between "free public schools" and "financial assistance directly to school children of the state for attendance at private non-sectarian elementary and secondary schools". La.Const. Art. 12, §§ 1, 6 (1921), as amended (1962). The constitution vests the State Board of Education with responsibility only for "supervision and control of all free public schools." Id. § 6. The Orleans Parish School Board has "power, control, and administration" of only public education. See Orleans Parish School Board v. City of New Orleans, La.App.1952, 56 So.2d 280, 284.

The Louisiana legislature's attempt to fragment the function of the State Board of Education does not defeat the responsibility of the Board under the Louisiana Constitution for a comprehensive program for public education. For jurisdictional purposes, it is entirely proper to consider the interrelated activities of all state agencies with their primary responsibility for public education. As we said in Hall v. St. Helena Parish School Board:

"The equal protection clause speaks to the state. The United States Consti-

tution recognizes no governing unit except the federal government and the state. A contrary position would allow a state to evade its constitutional responsibility by carve-outs of small units. At least in the area of declared constitutional rights, and specifically with respect to education, the state can no more delegate to its subdivisions a power to discriminate than it can itself directly establish inequalities. When a parish wants to lock its school doors, the state must turn the key. If the rule were otherwise, the great guarantee of the equal protection clause would be meaningless." 197 F. Supp. at 658.

No state or combination of state agencies "may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be." Burton v. Wilmington Parking Authority, 365 U.S. at 725, 81 S.Ct. at 861, 6 L.Ed.2d at 52; Hall v. St. Helena Parish School Board, 197 F.Supp. at 658.

Specific provisions of the Louisiana constitution and statutes also contradict the boards' assertion that they have "nothing whatsoever to do with the statutes complained of in the instant litigation." The financial assistance act requires as a condition for tuition grants that applicants "furnish satisfactory evidence of admissibility to a private * * * school, legally constituted and operated under the constitution and laws of the state". LSA–R.S. 17:2955, subd. A(2) (c) (1963). Under the Louisiana Constitution, it is the State Board of Education that has the "authority to approve private schools and colleges". La. Const. Art. 12, § 7; LSA–R.S. 17:411 (1963). Parish school boards have broad statutory responsibility to "see that the provisions of the state school laws are complied with" and to assure adequate funds for schools of the parish.[6]

---

6. LSA–R.S. 17:81 (1963): *"General powers of board*
Each parish school board * * * shall see that the provisions of the state school laws are complied with. * * *
Each school board shall exercise proper vigilance in securing for the support of

the *schools of the parish* all funds destined for the support of the schools, including the state funds apportioned thereto, *and all other funds.* * * *
(Emphasis added.)

During the trial the boards may satisfy the court that their involvement in the program is too insignificant to warrant their inclusion in a decree. "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action. * * * *" Fed.R.Civ.Proc., Rule 21. At this point, however, we consider the school boards properly joined as defendants in the case. Cf. United States v. Mississippi, 1965, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717; Griffin v. State Board of Education supra; James v. Almond, E.D.Va.1959, 170 F.Supp. 331.

### V.

■ On reflection, we have concluded that the Ninth Ward Elementary School, the Carrollton Elementary School, and the Garden District Academy should not be dismissed from this suit on the plaintiffs' motion. These schools are not necessary parties, as far as the constitutionality of the tuition grant system is concerned. However, they have a clearcut interest in any decision affecting their right to admit students receiving tuition grants. Moreover, the state risks contradictory decisions, if one of these schools or its students should sue for payment of the grants on the ground that the school in question does not practice segregation or receives insubstantial state support. Accordingly we vacate our order dismissing the three schools from this action and reinstate them as parties-defendant. See Fed.R.Civ.Proc. 21, 41 (b); Rekeweg v. Federal Mutual Assistance Co., N.D.Ind.1961, 27 F.R.D. 431, 435.

### VI.

The objections of the defendants to the plaintiffs' interrogatories and requests for admissions are specious. The defendants are directed to answer the interrogatories and requests for admission within fifteen days of the date of this opinion-order.