**Mildred COFFEY et al., Plaintiffs,**
**United States of America,**
**Plaintiff-Intervenor,**

**v.**

**STATE EDUCATIONAL FINANCE COM-**
**MISSION et al., Defendants,**

**State of Mississippi, Added Defendant.**

**Civ. A. No. 3906.**

United States District Court
S. D. Mississippi,
Jackson Division.

Jan. 29, 1969.

**1390**

Reuben Anderson, Jackson, Miss., for plaintiffs.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Robert T. Moore, U. S. Dept. of Justice, Washington, D. C., for plaintiff-intervenor.

Joe T. Patterson, Atty. Gen. of Miss., John E. Stone, Earl T. Thomas, Jackson, Miss., Semmes Luckett, Clarksdale, Miss., Hardy Lott, Greenwood, Miss., for defendants.

Before GODBOLD, Circuit Judge, and COX and RUSSELL, District Judges.

## PER CURIAM:

This class action was brought by Negro school children and their parents, residents of Mississippi, against the Educational Finance Commission of that state. The suit challenges the constitutionality of state tuition grants to Mississippi children between the ages of six and twenty-one attending private, non-sectarian schools.[1]

The United States intervened as a party plaintiff under 42 U.S.C. § 2000h–2 (§ 902 of the Civil Rights Act of 1964) and Fed.R.Civ.P. 24, and joined the State of Mississippi as an added defendant. Several minor children who are receiving tuition grants have intervened as parties defendant. Fed.R.Civ.P. 24.

Since the plaintiffs seek an injunction restraining the enforcement and execution of state statutes on the grounds of their unconstitutionality, a three-judge court was convened pursuant to 28 U.S.C. § 2281.[2] Jurisdiction is conferred on the court by 28 U.S.C. §§ 1331, 1343(2), 2201 and 2281. We conclude that the case is properly brought as a class action. This opinion constitutes the court's Findings of Fact and Conclusions of Law.

The grants are provided for by Senate Bill 1501, adopted in 1964,[3] as amended by House Bill 1114, adopted while this case was pending in 1968.[4] The legis-

1. The payment of private school tuition grants by states which formerly have operated de jure segregated public school systems has been a frequent subject of litigation. See Brown v. South Carolina State Bd. of Educ., Civil No. AC–1655 (D.S.C., May 31, 1968) appeal docketed 393 U.S. 222, 89 S.Ct. 449, 21 L.Ed.2d 391 (1968); Poindexter v. Louisiana Financial Assistance Comm'n, 296 F.Supp. 686 (E.D.La., March 19, 1968), aff'd 393 U.S. 17, 89 S.Ct. 48, 21 L.Ed.2d 16 (1968); Poindexter v. Louisiana Financial Assistance Comm'n, 275 F.Supp. 833 (E.D.La.1967), aff'd 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed. 2d 780 (1968); Lee v. Macon County Bd. of Educ., 267 F.Supp. 458 (M.D. Ala.1967); Griffin v. State Bd. of Educ., 239 F.Supp. 560 (E.D.Va.1965); Lee v. Macon County Bd. of Educ., 231 F.Supp. 743 (M.D.Ala.1964); Hall v. St. Helena Parish School Bd., 197 F.

Supp. 649 (E.D.La.1961), aff'd 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521 (1962). In each case the payments have been found constitutionally impermissible.

2. The court as originally constituted was composed of Circuit Judge Coleman and District Judges Cox and Russell. In August, 1968 Judge Coleman recused himself, and the court was reconstituted as presently composed. The parties have stipulated that the case is submitted to the reconstituted court on the same record and briefs as filed with the court as originally constituted. The evidence consists of depositions and stipulations. There has been no oral testimony taken before the court.

3. Miss.Gen.Laws, 1964 Ex.Sess., Ch. 27, at 58–562.

4. Miss.Gen.Laws, 1968 Reg.Sess., ch. 393 (approved July 18, 1968).

lation, as amended, is Miss.Code of 1942 (Ann., Recompiled) § 6248–101 et seq.

Senate Bill 1501 directed the State Educational Finance Commission to promulgate regulations for the payment of the grants and to administer the tuition grant program. The maximum amount of state funds an applicant could receive was set at $180 per school year, and the maximum of the combined state and local expenditure was limited to no more than the actual cost of tuition or the cost per pupil of the operation of the public schools in the locality, whichever was lower. The preamble to the bill stated that its purpose was "to encourage the education of all of the children of Mississippi" and "to afford each individual freedom in choosing public or private schooling." By the 1968 amendment the maximum payment was increased to $240 per school year.

Senate Bill 1501 was passed during an extraordinary session of the legislature in the summer of 1964. There were in operation at that time three nonsectarian private schools offering regular academic courses whose students subsequently have received state grants. In the first school year in which the grant law was in effect (1964–65), two new, regular, nonsectarian private schools went into operation. Both were located in one of the four Mississippi public school districts which had undertaken that year to desegregate pursuant to court orders.[5] During the 1965–66 school year, twenty new private schools in which the students received state tuition grants were added to the five that had been in operation in 1964–65. In each instance, the new schools opened in public school districts which either were under court order to desegregate or had submitted voluntary desegregation plans to the United States Department of Health, Education and Welfare.[6]

Since the filing of this suit in February, 1966 the growth in private schools has continued. Stipulations filed by the parties show that during the 1966–67 school year, there were thirty-five regular private schools in operation in which students received tuition grants. For the 1967–68 school year, the number rose to forty-nine.[7]

Much of the extensive data presented to the court concerning the financial operation of the private schools throughout the state whose students received tuition grants is digested in Appendices A and B. Appendix A shows the percentage of cash expenditures and the

5. While only two new schools went into operation, extensive organizational activity occurred throughout the state, and between May 12, 1964 and September 16, 1965 fifty-two corporation charters were issued to groups seeking to form new private schools.

6. In December of 1964, the Department of Health, Education & Welfare adopted regulations pursuant to Title VI of the Civil Rights Act of 1964 requiring public school systems to initiate desegregation plans for the forthcoming school year in order to qualify for federal financial assistance. See 45 C.F.R. Part 80. This, coupled with the filing of thirteen additional law suits seeking to compel the integration of public schools, resulted in several additional school districts adopting desegregation plans for the 1965–66 school year.

7. The relationship between the desegregation of the public schools and the growth of the private schools was particularly evident in Holmes County. On July 28, 1965 a court order was entered requiring the county to desegregate four grades a year starting with the 1965–66 school year. Alexander v. Holmes County School District, Civil No. 3779 (S.D. Miss.). By September, 1965 three private schools had opened in the county. After Negroes desegregated the first four grades of four of the public schools, the number of white pupils in these grades dropped from 771 to 28. In addition, several white teachers and at least one white principal were released from their public school contracts to take employment in the three new private schools. During the 1966–67 school year a few white pupils returned to two of the four desegregated public elementary schools, but others in grades 5–8 left to go to the private schools as desegregation arrived, and no white pupils were enrolled for this school year in the remaining two formerly all-white public elementary schools.

percentage of cash and non-cash contributions to the schools that were satisfied by state tuition payments in the 1965–66 school year. Appendix B shows the percentage of tuition charges satisfied by the tuition grants in 1968–1969. Combined with financial summaries of the operation of the individual schools, this data reveals that the state tuition grants have been critical to most of the schools. The formation and operation of the new schools have been on the thinnest financial basis. Tuition charges often have been scheduled to coincide with the quarterly payments of the state grants. Many individual parents have been either unable or unwilling to pay the balance due above the amount of the grants.

Depositions of officials of twenty-four of the twenty-five regular private schools benefiting from the tuition grant statute in 1965–66 show that these are segregated schools. Of the forty-nine regular private schools in which students received tuition grants during the 1967–68 school year, forty-eight had no Negro students in attendance. The remaining school, the Saints Academy in Lexington, Mississippi, had an all-Negro student body.[8]

We have thoroughly examined the record before us in a process of "sifting facts and weighing circumstances" in order to ascertain the impact of the tuition grant statute. Cf. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The evidence compels our conclusion that the tuition grants have fostered the creation of private segregated schools. The statute, as amended, encourages, facilitates, and supports the establishment of a system of private schools operated on a racially segregated basis as an alternative available to white students seeking to avoid desegregated public schools. We find, in the language of Griffin v. State Board of Education, 239 F.Supp. 560, 565 (E.D.Va.1965) that the grants "tend in a determinative degree to perpetuate segregation."[9] thereby violating the equal protection clause of the Fourteenth Amendment.

There is no claim in this case that the constitution requires all children to attend public schools, or that a private citizen may not select a private segregated school for his child because of the desire to keep the child from being educated with children of a different race. What is involved here are legislative enactments which "will significantly encourage and involve the State in private discriminations." Reitman v. Mulkey, 387 U.S. 369, 381, 87 S.Ct. 1627, 1634, 18 L.Ed.2d 830, 838 (1967).

The court will issue an order enjoining the payment of tuition grants under the authority of Senate Bill 1501 and House Bill 1114. However the order will not apply to grants that were committed on or before October 1, 1968 for the school year 1968–69. We are mindful of the obligation of this court and of the State of Mississippi to secure immediate compliance with the mandate of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). See Green v. School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). However we have concluded that it is not appropriate, past the middle of this school year, that we enjoin the tuition grants for the current year.

---

8. Prior to the payment of grants to the pupils of the Saints Academy, only one tuition grant recipient is known to have been a Negro. He received a grant to attend a special education school for speech and hearing defects in Kansas.

9. See also Lee v. Macon County Board of Education, 231 F.Supp. 743, 754 (M.D. Ala.1964): "As to that aspect of this case relating to grant-in-aid payments by the State of Alabama for the education of students in racially segregated schools, this Court is of the firm conclusion that such payments would be unconstitutional where they are designed to further *or have the effect of furthering* said segregation in the public schools." (emphasis added.)

APPENDIX A

SUMMARY OF FACTS REGARDING
THE CREATION AND OPERATION OF PRIVATE SCHOOLS

| SCHOOL | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bayou Academy | X | 40 | X | X | | X | X | | 62% | 35% | 34% |
| Canton Academy | X | 13 | X | X | X | | X | X | 49 | 49 | 49 |
| Central Holmes Ac'y | X | 189 | X | X | | X | | X | 79 | 78 | 67 |
| Council No. 1 | X | 145 | X | X | X | | X | | 49 | 39 | 39 |
| County Day School | X | 0 | X | X | | X | X | X | 49 | 46 | 30 |
| Cruger-Tchula Ac'y | X | 189 | X | X | X | | X | X | 62 | 55 | 53 |
| Deer Creek Ac'y | X | 116 | X | X | | X | | | 62 | 21 | 18 |
| E. Holmes Academy | X | 189 | X | X | X | | X | X | 62 | 95 | 90 |
| Forrest Co. Found. | X | 26 | X | X | X | | X | X | 46 | 51 | 50 |
| Harrison Co. School | X[a] | 306 | X | X | X | | X | | 50 | 57 | 37 |
| Heritage Academy | X | 6 | X | X | | | X | X | 48 | 43 | 39 |
| Indianola Academy | X | 7 | X | X | | X | X | X | 62 | 56 | 53 |
| Jackson Academy | | 145 | X | X | X | | | | 41 | 33 | 33 |
| Jeff Davis Academy | X | 25 | X | X | X | | X | | 49 | 45 | 43 |
| Lamar School | X | 25 | X | X | X | | | | 49 | 38 | 35 |
| Lula-Rich Academy | X[a] | 3 | X | X | X | | | | 49 | 28 | 26 |
| N. Delta School | X | 50 | X | X | X | | X | | 43 | 34 | 24 |
| Pas-Point School | X | 210 | X | X | | X | | | 76 | 103 | 87 |
| Sharkey-Issaquena | X | 64 | X | X | | X | X | | 62 | 51 | 50 |
| Southside Academy | X | 145 | X | X | X | | | X | 43 | 29 | 19 |
| Southwest Academy | X[a] | 145 | X | X | X | | | | 43 | 36 | 35 |
| S.W. Miss. Christian | X | 19 | X | X | X | | X | X | 49 | 39 | 39 |
| Tunica Institute | X | 0 | | X | X | | | | 67 | 21 | 15 |
| Vicksburg Academy | X | 63 | X | X | X | | X | X | 49 | 36 | 36 |

a - Public schools in county were desegregated one year prior to opening of these private schools.

KEY TO LISTS

1- The private school began operation the same year public schools in county were desegregated.
2- Number of Negroes enrolled in formerly all-white public schools in county during the 1965-66 school year.
3- Private school grades are same as some or all of desegregated public school grades of county during the 1965-66 school year.
4- No Negro pupils enrolled in the private school.
5- No Negro pupils would be admitted to the private school.
6- Private school was either formed to serve the white community or had no contact whatsoever with any Negro parent, pupil or contributor.
7- Tuition payment schedule provided for quarterly payments coinciding with grants received from the State.
8- Tuition payments of some parents in arrears.
9- Percentage of tuition made up by state tuition grants (1965-66).
10- Percentage of total cash operating expenses met by state tuition grants (1965-66).
11- Percentage of total operating costs, including non-cash contribution met by state tuition grants (1965-66).

APPENDIX B

Percentage of Tuition Charges
Satisfied by Tuition Grant

1968-69

| School | Tuition Charge | Tuition Grant | Percentage |
|---|---|---|---|
| Adams County Private School, Washington | $250.00 | $240.00 | 96.00 |
| Bayou Academy, Skene | $325.00 | $240.00 | 73.84 |
| Bearss Academy, Jackson | $450.00 | $240.00 | 53.33 |
| Brandon Academy, Brandon | $425.00 | $240.00 | 56.47 |
| Canton Academy, Canton | $375.00 | $240.00 | 64.00 |
| Central Holmes Academy, Lexington | $300.00 | $240.00 | 80.00 |
| Citizens Elementary School, Vicksburg | $410.00 | $240.00 | 58.53 |
| Claiborne Educational School, Lorman | $400.00 | $240.00 | 60.00 |
| Clay County, West Point | $410.00 | $240.00 | 58.53 |
| Clinton Academy, Clinton | $450.00 | $240.00 | 53.33 |
| Columbia Academy, Columbia | $375.00 | $240.00 | 64.00 |
| Council School #1, Jackson | $420.00 | $240.00 | 57.14 |
| Council School #2, Jackson | $510.00 | $240.00 | 47.05 |
| Council School #3, Jackson | $510.00 | $240.00 | 47.05 |
| County Day School, Marks | $385.00 | $240.00 | 62.33 |
| Covington County Academy, Mount Olive | $365.00 | $240.00 | 65.75 |
| Cruger-Tchula Academy, Cruger | $300.00 | $240.00 | 80.00 |
| Copiah Ed. Found., Crystal Springs | $405.00 | $240.00 | 59.25 |
| L. A. Dedeaux Academy, Gulfport | $371.00 | $240.00 | 64.69 |
| Deer-Creek Educ. Inst., Arcola | $250.00 | $240.00 | 96.00 |
| East Holmes Academy, West | $300.00 | $240.00 | 80.00 |
| Forrest Co. S. Found., Hattiesburg | $400.00 | $240.00 | 60.00 |
| Gray Academy, Ashland | $410.00 | $240.00 | 58.53 |
| Gulf Coast Mill Academy, Miss. City | $1,395.00 | $240.00 | 17.20 |
| Harrison County Private School, Biloxi | $371.00 | $240.00 | 64.69 |

| School | Tuition Charge | Tuition Grant | Percentage |
|---|---|---|---|
| Hattiesburg Academy, Hattiesburg | $450.00 | $240.00 | 53.33 |
| Heritage Academy, Columbus | $475.00 | $240.00 | 50.52 |
| Indianola Academy, Indianola | $400.00 | $240.00 | 60.00 |
| Jackson Academy, Jackson | $477.00 | $240.00 | 50.31 |
| Jeff Davis Academy, Meridian | $380.00 | $240.00 | 63.15 |
| W. H. Kirk Academy, Grenada | $400.00 | $240.00 | 60.00 |
| Lamar County School, Meridian | $315.00 | $240.00 | 76.19 |
| Live Oak Academy, Kreole | $363.00 | $240.00 | 66.11 |
| Lula-Rich Academy, Lula | $375.00 | $240.00 | 64.00 |
| North Delta School, Pleasant Grove | $435.00 | $240.00 | 55.17 |
| Pillow Academy, Greenwood | $400.00 | $240.00 | 60.00 |
| Rebul Academy, Learned | $374.00 | $240.00 | 64.17 |
| Sharkey-Issaquena, Rolling Fork | $375.00 | $240.00 | 64.00 |
| Southwest Academy, Jackson | $430.00 | $240.00 | 55.81 |
| Tunica Institute of Learning, Tunica | $335.00 | $240.00 | 71.64 |
| Walnut Hills School, Vicksburg | $375.00 | $240.00 | 64.00 |
| Saints Academy, Lexington | $300.00 | $240.00 | 80.00 |

NOTE: Tuition charges based upon 1967-1968 school year.   Tuition
grant of $240.00 provided by H.B. 1114, Mississippi Laws
1968, effective July 18, 1968.