**William H. GREEN et al., Plaintiffs,**

v.

**David M. KENNEDY, Secretary of the Treasury of the United States of America, and Randolph W. Thrower, Commissioner of Internal Revenue, Defendants.**

**Civ. A. No. 1355–69.**

United States District Court
District of Columbia.

Jan. 12, 1970.

Frank R. Parker, and James Robertson, Lawyers' Committee for Civil Rights Under Law, Jackson, Miss., and Robert L. Nelson, Lawyers' Committee for Civil Rights Under Law, Washington, D. C., for plaintiffs.

Johnnie M. Walters, Asst. Atty. Gen., Tax Division, for defendants, Richard M. Roberts, Deputy Asst. Atty. Gen., Tax Division, and James L. McBride, Atty., Tax Division, Dept. of Justice, Washington, D. C., and Thomas A. Flannery, U. S. Atty. for the District of Columbia, of counsel.

Before LEVENTHAL, Circuit Judge, WADDY and PRATT, District Judges.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER FOR PRELIMINARY INJUNCTION

PER CURIAM:

Plaintiffs, Negro Federal taxpayers and their minor children attending public schools in Mississippi, have brought this class action to enjoin the Secretary of the Treasury from granting tax exempt status to private schools in Mississippi which discriminate against Negroes in admissions. They claim that sections 170 and 501 of the Internal Revenue Code of 1954 are unconstitutional to the extent that they support the establishment and maintenance of segregated private schools through tax benefits, and particularly through income tax deductions made available to persons making contributions to such schools.[1]

---

1. These are the pertinent provisions of Internal Revenue Code § 170, 26 U.S.C. § 170.

(c) Charitable contribution defined.— For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

\* \* \* \* \*

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

(D) no substantial part of the activities of which is carrying on propa-

They seek preliminary and permanent injunctions to enjoin defendants, the Secretary of the Treasury, and the Commissioner of Internal Revenue, from approving the applications of private schools from which Negro students are excluded on the basis of color for tax-exempt status under § 501(c) (3), and thus ensuring donors the right to deduct contributions to these schools from gross income under § 170(a) of the Code. They also seek preliminary and permanent relief in the form of mandatory injunctions requiring defendants to rescind and revoke the approval heretofore granted such application for tax-exempt status by private schools from which Negro students are excluded.

Plaintiffs also raise non-constitutional arguments against federal tax benefits to segregated private schools based on the claim that such schools serve no public benefit and do not satisfy the statutory requirement of being "organized and operated exclusively for [specified] purposes," and that such deductions and exemptions violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibiting racial discrimination "under any program or activity receiving federal financial assistance."

The Internal Revenue Service has given attention to the problem of tax benefits to segregated private schools. Since October 15, 1965, applications for tax exemption under § 501(c) (3) of the Code filed by private schools apparently found to be operated on a segregated basis have been forwarded to the National Office for processing. From October 15, 1965 to August 2, 1967, the Service maintained a freeze, suspending action, on a nationwide basis, on such applications, pending review of the legal issues involved.[2] This freeze was terminated August 2, 1967, with this announcement of the policy henceforth to be followed concerning segregated private schools:

"* * * [T]he Service stated that its general conclusion is that exemption will be denied and contributions will not be deductible if the operation of the school is on a segregated basis and its involvement with the state or political subdivision is such as to make the operation unconstitutional or a violation of the laws of the United States.

"Where, however, the school is private and does not have such degree of involvement with the political subdivision as has been determined by the courts to constitute State action for constitutional purposes, rulings will be issued holding the school exempt and the contributions to it deductible assuming that all other requirements of the statute are met." [3]

ganda, or otherwise attempting, to influence legislation.

A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B).

Internal Revenue Code § 501, 26 U.S.C. § 501:

(c) List of exempt organizations.—
* * *

* * * * *

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

2. Despite this suspension a few ruling letters were issued in November 1965 to schools whose applications had been under consideration at the District Director's level prior to October 15, 1965.

3. Internal Revenue Service Press Release, August 2, 1967, 1967 CCH Standard Federal Tax Reports, ¶ 6734.

Since that announcement the Service has approved the applications of a significant number of segregated private schools—beginning with the 42 approvals that were issued August 2, 1967.

The Service is of the view that tax benefits may be denied a private segregated school only if the operation of the school is otherwise unconstitutional by virtue of state involvement. The core of the substantial constitutional question raised in this action is whether the statutory provisions granting tax exemption may constitutionally be extended to segregated private schools even though the operation of such schools is not otherwise unconstitutional because of state involvement.

Before us now is plaintiffs' motion for a preliminary injunction pending resolution of this issue. We are asked temporarily to compel the defendants to revoke all outstanding exemptions to segregated private schools, to deny deductibility to contributions to such schools, and to enjoin them from granting further exemptions and deductions. For the reasons set out below we think it appropriate to issue a temporary injunction calculated to preserve the status quo pending the final determination of the litigation, and to prevent the defendants from taking further affirmative action likely to result in irreparable harm to the plaintiffs. Accordingly we grant plaintiffs' motion in part by enjoining defendants from issuing further ruling letters under sections 170(c) and 501(c) of the Internal Revenue Code to private schools in Mississippi unless they have affirmatively determined on the basis of adequate investigation that the applicant school does not discriminate against Negroes in its admissions policy.

# I

## Jurisdiction

A three-judge court was convened in accordance with the requirements of 28 U.S.C. § 2282, which provides: "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution" shall not be granted by any district court unless determined by a three-judge district court composed under 28 U.S.C. § 2284.

■ Although the jurisdiction of the three-judge district court was not contested by counsel, we have given consideration to the question of jurisdiction, since we are required to stay within the bounds of jurisdiction set by Congress whether counsel raise the point or not.

■ In our view the three-judge court was properly convened in view of the substantial constitutional ground for relief stated in the complaint that if the actions of defendant officials are within the authority and interest of the Act, the Act is to that extent unconstitutional. The jurisdiction of the three-judge court to consider this constitutional ground for relief is not negatived by the fact that the complaint also states a non-constitutional ground for relief, that the actions of the defendant officials in certifying private segregated schools for tax exemption are in excess of their authority under the Internal Revenue Code as properly construed and in contravention of other Federal statutory provisions. Flast v. Cohen, 392 U.S. 83, 90, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

■ The requirement of a three-judge court is not avoided even assuming that the class of plaintiffs, residents of Mississippi, focuses the litigation on the application of a federal statutory scheme in that state, since a ruling for plaintiffs on the merits of their constitutional attack in that area casts doubt on the validity of the application of the Federal statute elsewhere. A determination in this action in favor of plaintiffs, though confined to a temporary or permanent decree limited to prohibiting exemptions and deductions for segregated schools in Mississippi, obviously has broader geographical significance, and thus presents the kind of order which Congress mandated be available only from a three-judge district court, with right of direct

appeal to the Supreme Court. Flast v. Cohen, *supra* 392 U.S. at 89–90, 88 S.Ct. 1942.

 There is no jurisdiction of a three-judge court where the charge of unconstitutionality of the statute is not substantial. Brotherhood of Locomotive Firemen & Enginemen v. Certain Carriers, 118 U.S.App.D.C. 100, 331 F.2d 1020 (1964). When the substantial constitutional attack is not upon the statute but rather upon regulations or administrative action thereunder, the three-judge court provision is not applicable. Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 113–116 (2d Cir. 1966).

██ The case before us is not subject to this jurisdictional infirmity. There is a substantial question whether the act, as applied, is unconstitutional and that establishes jurisdiction in this court. There is also an alternative claim that even if the statute is valid the administrative course pursued by the Internal Revenue Service is unauthorized. That alternative claim may very well be sound, and if so relief may be granted by this court in the exercise of its pendent jurisdiction. Flast v. Cohen, *supra*.

██ We take note of defendants' contention that plaintiffs have no standing to bring this action in their capacity as taxpayers. We need not consider that issue at this juncture. This case is properly maintained as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, by Negro school children in Mississippi and the parents of those children on behalf of themselves and all persons similarly situated. They have standing to attack the constitutionality of statutory provisions which they claim provides an unconstitutional system of benefits and matching grants that fosters and supports a system of segregated private schools as an alternative available to white students seeking to avoid desegregated public schools. We follow the precedent on this point of the three-judge District Court for the Southern District of Mississippi in Coffey v. State Educational Finance Commission, 296 F.Supp. 1389 (1969).

## II

### *Considerations Calling for Issuance of a Preliminary Injunction*

██ The issuance of a preliminary injunction, pending determination of the litigation, is called for in the case before us by the convergence of these inter-related considerations: (1) The issue on the merits is grave and substantial, and plaintiffs have a reasonable probability of success. (2) The primary effect of the temporary injunction is to preserve the status quo pendente lite. (3) Plaintiffs are threatened with irreparable injury if the injunction is denied, and the final decree is in their favor. (4) On the other hand if the temporary injunction is granted but final decree is rendered against plaintiffs, little if any permanent injury will be done to others, and such harm as may eventuate is outweighed by the other considerations calling for a temporary injunction. (5) The public interest is served by grant of the temporary injunction.

That these considerations constitute a showing that calls for issuance of a temporary injunction pendente lite is clear from the precedents. "The general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action after a full hearing." 7 Moore's Federal Practice ¶ 65.04[1]; Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953).

An injunction pendente lite is properly granted "where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable if the application be denied and the final decree be in his favor," and this outweighs any irreparable harm foreseen for defendant if the injunction be granted, but the final decree is in defendant's favor. Ohio Oil Co. v. Con-

way, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972 (1929).

Other decisions require a showing by plaintiffs not only of grave and substantial issues, but of a reasonable probability of success. We need not rule on whether this additional showing is necessary when what is involved is a temporary injunction that in effect maintains the status quo, because in the present case we conclude that plaintiffs have shown a reasonable probability of success on the merits.

The granting *vel non* of injunctive relief properly takes into account the public interest, over and apart from any private interests concerned, as appears from Justice Stone's opinion in Virginian Ry. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937), and many other precedents.

We now consider each of these factors, and set forth our reasons for concluding on the basis of the pertinent evidence and findings, that they are present in the case ar bar.

Out findings of fact are of course subject to reconsideration, and modification, in the light of the total submission by the parties on the merits, but they stand as the findings we consider appropriate at this time for the purpose of ruling on this application for interlocutory relief.

### A. The Substantiality of the Grave Constitutional Issues Presented by Plaintiffs

The demonstration of the substantiality of the grave constitutional questions presented by plaintiffs requires little more than a statement that there has been presented to this court, not only the opinion issued January 29, 1969, by the United States District Court for the Southern District of Mississippi in Coffey v. State Educational Finance Commission, 296 F.Supp. 1389, but also the entire evidentiary record in that case, incorporated in affidavits filed in this court. On the basis of that record alone, the District Court, a three-judge court consisting of Circuit Judge Godbold and District Judges Cox and Russell, granted injunctive relief, as described hereafter. Moreover, that evidentiary record is supplemented and confirmed by depositions in the case at bar that have been filed with this court.

In the *Coffey* case, the court held unconstitutional state tuition grants, provided by the legislature of Mississippi by bills adopted in 1964 and amended in 1968, to Mississippi children attending private, segregated schools. During the first year of the law's operation, two new private schools were established, both in school districts which had been required to desegregate pursuant to court order. The next year, twenty new private schools opened, all in districts where desegregation was imminent. The court found that the number of private schools grew continually in later years.

The court made particular findings concerning Holmes County to illustrate the relationship between the desegregation of public schools and the growth of private schools. A July 28, 1965 order of the United States District Court for the Southern District of Mississippi required the desegregation of county schools, four grades a year. It was followed in a matter of two months by the opening of three private schools. After Negro pupils began attendance in the first four grades of four public schools, the white enrollment in these grades dropped from 771 to 28. During the 1966–67 school year no white pupils were enrolled in two of the formerly all-white public elementary schools.

The court found that the private schools which had sprung up under the tuition grant program were segregated schools. Of the forty-nine regular private schools in which students received tuition grants during the 1967–68 school year, forty-eight had no Negro students in attendance, and the remaining school had an all-Negro student body. The court concluded that these schools constituted "a system of private schools operated on a racially segregated basis as an

alternative to white students seeking to avoid desegregated public schools." It held the Mississippi tuition grant statute unconstitutional under the equal protection clause of the Fourteenth Amendment because it fostered the creation of, and "encourage[d], faciliate[d] and supporte[d] the establishment of" that segregated private school system.

We adopt these findings of the *Coffey* court for the purpose of ruling on this motion for temporary injunction. Defendant Internal Revenue Service officials have admitted that the exhibits attached by plaintiffs to their motion for interlocutory injunction are copies of documents filed with the District Court in the *Coffey* case. They have declined to acquiesce in plaintiffs' request for admissions of the facts stipulated in that case by the United States and other parties, stating that they, as Internal Revenue Service officials, are without knowledge of the matters involved. We need not pursue the question whether the doctrine of collateral estoppel precludes the Internal Revenue Service officials from denying, on the final determination of the case before us what the United States Government has represented to another United States District Court in the *Coffey* case. In any event, the submission by the plaintiffs, setting forth facts which officers of the United States Government have formally represented in a United States court to be true and correct, are sufficient to justify this court in making findings to the same effect for the purpose of considering the application for temporary injunction, certainly in the absence of any affidavits or other tender of proof filed in this court tending to contradict those findings.

The evidence before this court corroborates and amplifies the evidence before the *Coffey* court. The three private schools established in Holmes County in the summer of 1965—are identified as the Cruger-Tchula Academy, the Central Holmes Academy, and the East Holmes Academy.

On the evidence and stipulation in the *Coffey* case, and the depositions filed in this court, we find that segregated private schools have been established in Mississippi for the purpose of avoiding the result of a unitary, non-racial public school system required by the Federal court decisions outlawing segregation in public schools, and in an attempt to maintain a broad pattern of racial segregation in the school system.

*Significance of Tax Deductions in Assisting Segregated School Pattern*

We are aware that the case before us does not involve outright tuition grants to students by the Government, such as were invalidated in the *Coffey* case, but rather tax benefits to the schools, and to persons contributing to the schools.

For reasons we shall now relate we find this difference to be only a difference of degree that does not negative our essential finding, on the evidence presented on the motion, that the tax benefits under the Internal Revenue Code mean a substantial and significant support by the Government to the segregated private school pattern. The pertinent legal conclusion is that there is a substantial question in plaintiffs' claim that this support constitutes a derogation of constitutional rights.

The support which is significant in the context of this controversy is not the exemption of the schools from taxes laid on their income, but rather the deductions from income tax available to the individual, and corporations, making contributions supporting the school.

The general significance of these tax deductions as supportive of the pertinent activity can hardly be gainsaid, and may, indeed, be the subject of judicial notice. Compare Tank Truck Rentals, Inc. v. Commissioner of Internal Revenue, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958), which predicated the disallowance of a tax deduction taken by a trucking company for fines paid for overweight violations on the assump-

tion that such deductions "would but encourage continued violations."

The critical significance of support from tax deductions is in effect recognized by the Commissioner, and in the general context of school segregation, in his denial of deductions to contributions to segregated schools that have significant state involvement. What stops him from extending disallowance to the schools like those involved in the case at bar is not unawareness of the significance of deductions, but rather certain legal conclusions, including conclusions as to the scope of his authority under the Code.

Our findings do not depend, however, only on general tendencies. We find pertinence in, and adopt, the findings of the court in *Coffey*, available on the evidence incorporated into the papers now before us, concerning the private segregated schools that have flourished in the wake of desegregation rulings, that—"The formation and operation of the new schools have been on the thinnest financial basis." 296 F.Supp. at 1392.

The papers before us include depositions of officials of Cruger-Tchula Academy and Central Holmes Academy, who testified that while their schools were established in the thought of meeting operating expenses by tuitions, the plans made for capital financing for building the structures involved, were based on contributions.[4]

Even at a time when Mississippi state grants for tuition were available the officials of the private segregated schools considered it important to obtain the support involved in the obtaining of certification of tax exemption. This was in part based on what the officials termed the psychological help to the school, from the public reaction to what was considered an approval by the Federal Government. In present context we focus on the view of the school officials that the granting of the Federal tax exemption would be a "significant factor" that would "aid the school in obtaining finances."[5]

The charitable deduction is not only significant in providing the capital for the establishment of the segregated schools but in extending the breadth of the segregation that the schools could effectuate. This is borne out by the letter of the Directors of the Central Holmes Academy, dated April 18, 1969, soliciting contributions to the scholarship fund. This letter, introduced at deposition,[6] explains that State tuition grants are no longer available and "* * * unless we receive substantial contributions to our Scholarship Fund there will be many, many students, whose minds and bodies are just as pure as those of any of their classmates and playmates * * *, who for financial reasons alone, will be forced into one of the intolerable and repugnant 'other schools', * * * or into dropping out of school entirely * * *" The letter emphasizes to the reader that "donations to the school are deductible from your gross income for tax purposes."

The importance of tax-exemption rulings issued by defendant officials and the recourse to segregated private schools as a dual segregated school system is borne out by the records of the Internal Revenue Service [7] with respect to rulings issued since 1954 to private schools in Mississippi. No applications were filed until 1963 when one application was filed in July, within months after the first school desegregation suit was filed in Mississippi (in March 1963). In the summer of 1964 the *Evers* desegregation ruling took effect.[8] In 1964, six

---

4. CHA Dep. 44–45 (August 14, 1969); C-TA Dep. 64 (August 14, 1969).

5. CHA, Dep. pp. 43–44 (August 14, 1969).

6. Plaintiffs' Exh. 2, CHA Deposition (August 14, 1969).

7. Affidavit of John R. Barber, Chief, Rulings Section, Exempt Organization Branch, July 28, 1969.

8. Evers v. Jackson Municipal Separate School Dist., 328 F.2d 408 (5th Cir. Feb. 1964). The order entered by the Dis-

applications were filed, all between August 28, 1964, and December 14, 1964; all were approved in 1964. Subsequent approvals were: In 1965, six. In 1966, none due to the freeze. In 1967, nine approvals issued August 2, 1967, and three thereafter. In 1968 six. Between January 1 and June 30, 1969, there were five. These data confirm the significance of the aid of tax exemptions, deductions and pertinent rulings, to the private segregated schools of Mississippi.[9]

*Significance of Federal Government Support*

 We have taken into account that what is involved in the case before us is the Federal Government, and not the States, and that there is no allegation or evidence that it is the purpose of the Federal statute or regulations to foster segregated schools. These considerations do not undercut the plaintiffs' claims.

The due process clause of the Fifth Amendment does not permit the Federal Government to act in aid of private racial discrimination in a way which would be prohibited to the States by the Fourteenth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

The issue of purpose may be decisive in demonstrating unconstitutionality when a governmental purpose to foster segregation is affirmatively shown, but the lack of segregative purpose on the part of the Government does not avoid the constitutional issue if the Government action materially supports a program of school segregation.

There is substantial support for the conclusions that the validity of tax exemption and deductibility of contributions are to be determined on the basis of (1) their practical tendency to increase the incidence of private discrimination, and (2) whether the discrimination so augmented frustrates the exercise of fundamental liberties. As already noted in Coffey v. State Educational Finance Commission, *supra*, the court focused on the "impact" of the tuition grant statute and concluded that "the statute * * * encourages, facilitates, and supports the establishment of a system of private schools operated on a racially segregated basis as an alternative available to white students seeking to avoid desegregated public schools." Id. 296 F.Supp. at 1392.

The *Coffey* opinion relies on Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) which held that state action was established in the leasing of restaurant space in a parking facility run by a state agency. In that case the Court pointed out that the lack of discriminatory motive, and the "good faith" of the State did not negative unconstitutionality where it had elected to make a lease to a private company engaging in discrimination and had thereby "elected to place its power, property and prestige behind the admitted discrimination." (365 U.S. at 725, 81 S.Ct. at 862).

In Simkins v. Moses H. Cone Memorial Hosp., 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964), the Court, noting the generally benevolent purpose of the Hill-Burton Act (for better health facilities), nevertheless found a denial of constitutional rights when Federal funds were used to support a private hospital that discriminated against Negro patients. The *Cone* case involved an outright grant of Federal funds. It provides substantial support for a similar ruling in a case of a "matching grant," which is in effect the impact of a Federal tax credit or deduction.

trict Court on remand required filing of subsequent desegregation plans during the summer of 1964.

9. That such aid is significant to a number of schools is not negatived by the existence, according to the Service, of 19 private schools in Mississippi that are either successfully operated for private profit or for other reasons have not applied for tax exempt rulings.

The Internal Revenue Service has not remained aloof from the possibility that tax benefits must be denied to schools that propose an operation violative of constitutional rights. Its answers to plaintiffs' interrogatories reveal that following the policy announcement in the August 2, 1967 press release, the Service has centralized all applications for rulings by schools that are "apparently found to be operated on a segregated basis." The Service requires "information with regard to the relationships of individual schools with state and local units of the Government." [10] Specifically the institution is required to state whether it has sought or intends to seek funds from Federal, State, county or local governments, or any "support in the nature of facilities, the use of facilities, or in any other form from any State or local government." An audit procedure, with provision for field examination, has been established for use in regard to private schools as to which exemption rulings have been issued.

The approach of the Service underlying its ruling recognizing exemption may be illustrated by the typed paragraph added to the form letter addressed August 2, 1967, to the Cruger-Tchula Academy Foundation:

The conclusions in this ruling are based on the Service's understanding that the operations of your school do not involve State Action constituting a violation of the Constitution or laws of the United States. Further, in the event of legislative developments, or judicial interpretations—constitutional or otherwise—respecting the legality or educational qualification of your purpose or manner of operation which affect your eligibility under section 501(c) (3) of the Code, this ruling shall cease to be of effect.

The inadequacy, from a constitutional point of view, with the statute as applied by the Internal Revenue Service, lies in the assumption of the Service that the ultimate constitutional issue is whether constitutional guarantees have been violated because the establishment and maintenance of segregated private schools has been aided by State involvement and support, independent of any support from Federal tax benefits, and that only in such event of current involvement or other State action could Federal tax benefits be withheld.

In our view the scope of constitutional protection cannot be so narrowly defined to disregard the impact of past State action and support, and to ignore the significance of current Federal support from tax benefits. Where there is a showing, as here, that a dual system of segregated schools was established and maintained in the past either under State mandate or with substantial help from State involvement and support, the state and its school districts are under a present, continuing and affirmative duty to establish a "unitary, nonracial system of public education * * * a system without a 'white' school and a 'Negro' school, but just schools." Green v. County School Board of New Kent County, 391 U.S. 430, 436, 442, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (Oct. 29, 1969). The Federal Government is not constitutionally free to frustrate the only constitutionally permissible state policy, of a unitary school system, by providing government support for endeavors to continue under private auspices the kind of racially segregated dual school system that the state formerly supported.

As the Supreme Court made plain in Elkins v. United States, 364 U.S. 206, 221, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), in rejecting the so-called "silver platter" doctrine, the Federal judiciary cannot acquiesce in activity of the Federal Government that "serves to defeat the state's effort to assure obedience to the Federal Constitution."

---

10. Answer to Plaintiffs' Second Interrogatories.

B. *The Primary Effect of the Interlocutory Injunction Granted by this Court is to Preserve the Status Quo Pending Final Determination*

The practical impact of an injunction directed against the issuance of further ruling letters under sections 170 and 501 depends on the legal effect of these ruling letters. The failure to issue a ruling letter does not preclude either exemption or deductibility. With respect to deductions, the issuance of a ruling letter and the inclusion of the organization's name in Publication No. 78, Cumulative List, Organizations Described in Section 170(c) of the Internal Revenue Code at 1954, merely provides advance assurance of deductibility. Thus Rev.Proc. 68–17, 1968–1 C.B. 806 provides:

> If the facts and evidence available to the District Director, including the results of any preliminary examination, clearly raise serious doubts concerning the continued qualification of the organization to receive deductible contributions, and in the opinion of the District Director there should be public notice to potential contributors, he shall immediately advise the organization that he intends to recommend * * * that the advance assurance of deductibility of contributions to the organization be suspended pending a complete examination of the qualification of the organization.

We are not at this juncture requiring withdrawal of tax exempt rulings (and their advance assurances of deductibility) already issued by defendants.

However, it is plainly appropriate to enjoin the issuance of additional tax-exempt rulings. If they were issued they would, according to defendants' rulings, expand the scope of automatic deductibility that would be fully effective to permit deductions for current contributions, made during the pendency of this action, even if the court should rule in favor of plaintiffs on the merits.

Similar considerations apply to an exemption ruling under § 501 Rev. Rul. § 1.501(a)–1 provides that an organization which does not change its character, purpose or methods of operation may rely on a determination of tax exempt status "subject only to the Commissioner's inherent power to revoke rulings because of change in law or regulations or for other good cause." IRS Doc. 5551 (Oct. 1966) states that an exemption ruling is retroactive to the date that the organization was formed provided that its activities prior to the date of the ruling were those required by statute. Thus the holding of exemption applications in suspense does not finally determine tax liabilities but rather postpones determination of such liability until the issues before us have been resolved.

C. *Public Interest in Avoiding Irreparable Injury Threatened in Denial of Constitutional Rights*

Linked in fact and substance are the other considerations calling for the issuance of the interlocutory injunction. We find (i) that the class of Negro children and parents in Mississippi represented by plaintiffs are threatened with irreparable injury if the interlocutory relief is withheld and final relief is in their favor; (ii) that there is a broad public interest in providing protection against such injury, which would consist of the infringement of constitutional rights if plaintiffs are sustained in the final decree, that provides a basis for judicial relief over and above the general judicial doctrine protecting a plaintiff threatened with an irreparable injury resting solely on private rights, and that (iii) these considerations far outweigh any disruption or other possibility of irreparable injury invoked by the Treasury officials.

The threat of irreparable injury to the plaintiffs' class is plain in view of the findings already made. There is a substantial possibility that they will be denied their constitutional rights to a desegregated education during the peri-

od of litigation. There is the further prospect of injury continuing even after a final decree in their favor for if private desegregated school structures are built in material degree by reason of contributions stimulated and supported by tax exemption certificates issued by defendants, those buildings may be available for private school operation even assuming all future Government support is removed.

The Government support at the crucial juncture of private school construction provided by defendants may thus result in a continuing segregation, with a segregated school able to support itself on a private basis as to the lesser requirement of operating expenses after the hurdle of high construction costs is cleared with the aid of Government support.

Equity properly grants relief when considerations of public interest are involved, as distinguished from purely private interest. Virginian Ry. v. System Fed. No. 40, 300 U.S. 515, 552, 57 S.Ct. 592 (1937); Virginia Petroleum Jobbers Assn. v. FPC, 104 U.S.App.D.C. 106, 112, 259 F.2d 921, 927 (1958). This principle is properly invoked by plaintiffs claiming denial of constitutional rights.

The probability of irreparable harm to plaintiffs' class and the public interest is heightened by the prospect that the Supreme Court's recent ruling in Alexander v. Holmes County, *supra*, and corollary rulings of the circuit courts of appeal, will stimulate recourse to private schools for expansion and maintenance of a pattern of segregated education in a dual school system.

Under these circumstances threatened federal support for the maintenance of separate school systems for white and black is threatened irreparable injury. At present the defendants stand ready to grant exempt status and assurance of deductibility to private schools without determining whether or not they are segregated. As a consequence and in view of the court-ordered integration in the public schools of Mississippi, see Alexander v. Holmes County Board of Education, *supra*, exempt status will be given to segregated schools and this exemption and assurance of deductibility will lead to larger and more numerous contributions than would otherwise have been made, and to construction of private segregated schools that may later continue on a segregated basis through private support of current expenses. We are not to be taken as ruling on the question whether such private operation would be free from constitutional objection; it is enough that the possibility adds to plaintiffs' showing of threat of irreparable injury.

On the other hand, the United States Government, the schools which seek tax exempt status, and potential contributors will suffer no significant irreparable hardship if defendants are enjoined from issuing further rulings under §§ 170(c) and 501(c). As noted above, a similar freeze was instituted by the defendants between October 1965 and August 1967. It is not contended that that freeze wrought irreparable hardship. As we have shown, a freeze will not permanently deprive the schools or their contributors of tax benefits to which they are entitled. If plaintiffs do not prevail on the final determination, contributions made during the pendency of this litigation will be deductible and the schools which meet the requirements for exemption will receive exemption retroactively. Some contributors may be deterred by the doubt which this litigation casts on the deductibility of their contribution, but the schools are not entitled to have potential contributors kept ignorant of the fact that serious questions about the validity of these deductions have been raised.

A final consideration in weighing the relative hardships is that any assertion of entitlement to tax benefits for private segregated educational activities rests only on a foundation of private right and statutory grace. Exemptions

and deductions are always a matter of legislative grace and not of right. On the other hand the interests put forward by plaintiffs, and their class, are of a constitutional dimension, and in furtherance of the principles underlying constitutional rulings of the Supreme Court and the District Courts and Circuit Courts of Appeals. At least where substantial claims of constitutional rights are involved, they stand on a higher plane so far as ultimate public interest is concerned, than a claim of access to a provision of legislative grace.

The foregoing opinion constitutes the court's Findings of Fact and Conclusions of Law.

The relief we have provided today is not necessarily our last ruling on the matter of interlocutory relief. It may be that the sound application of the principles herein set forth to the conditions and circumstances appearing in the public and private schools requires relief with respect to rulings already granted by the Revenue Service. It has been asserted in plaintiffs' recent motion for leave to file an additional exhibit, that some private schools that have already received Revenue rulings are broadening their enrollment, activities, and structures beyond anything in contemplation at the time they filed their applications and received the rulings. If so, the principle of maintaining the status quo might call for a decree that would permit continuance of tax benefits provided by the rulings already issued only if the activities of the schools involved are maintained without expansion. However, in the interest of sound administration we think that any such matter should be made the subject of an application to supplement the temporary relief herein granted. Supplemental applications are appropriate, if the parties be so advised, for rulings broadening, confining, or clarifying temporary relief. Perhaps the need for supplemental relief can be obviated by expediting determination of the merits.

## ORDER FOR PRELIMINARY INJUNCTION

Upon consideration of plaintiffs' motion for preliminary injunction, defendants' opposition thereto, and pleadings, affidavits, exhibits and depositions of the parties in support thereof, and after hearing argument of the parties thereon, this court for the reasons set forth in the opinion filed herewith hereby enters the following order:

It is this 12th day of January, 1970,

Ordered, Adjudged, and Decreed that defendants David M. Kennedy, as Secretary of the Treasury, and Randolph W. Thrower, as Commissioner of Internal Revenue, their agents, servants, employees, and attorneys are enjoined and restrained, pending further order of this Court, from

(a) approving any pending or future application for tax-exempt status under section 501(c) (3) of the Internal Revenue Code of 1954 filed with the Internal Revenue Service by any private school located in the State of Mississippi which enrolls students in any of the grades first through twelve;

and/or (b) determining that contributions to any such school having an application for tax exempt status now pending before, or henceforth filed with, the Internal Revenue Service are deductible by the donors under section 170(a) of the Internal Revenue Code of 1954,

unless they first affirmatively determine pursuant to appropriate directives and procedures satisfactory to this Court that the applicant school is not a part of a system of private schools operated on a racially segregated basis as an alternative to white students seeking to avoid desegregated public schools.