Clifford V. McGLOTTEN et al.,
Plaintiffs,

v.

John B. CONNALLY et al., Defendants.

Civ. A. No. 3377-70.

United States District Court,
District of Columbia.

Jan. 11, 1972.

Lawrence A. Aschenbrenner, Kenneth J. Keller, John A. Strait, Charles J. Merten, Portland, Or., Frank R. Parker,

Jackson, Miss., for plaintiffs, American Civil Liberties Union of Oregon.

Hope Eastman, Washington, D. C., for plaintiffs, American Civil Liberties Union.

Johnnie M. Walters, Asst. Atty. Gen., Richard M. Roberts, Deputy Asst. Atty. Gen, Jack B. Teplitz, Trial Atty., Tax Division, Dept. of Justice, for defendants.

Before DAVID L. BAZELON, Chief Judge, AUBREY E. ROBINSON, JR., and PARKER, District Judges.

## OPINION

BAZELON, Chief Judge:

Plaintiff, a black American allegedly denied membership in Local Lodge #142 of the Benevolent and Protective Order of Elks solely because of his race,[1] brings this class action to enjoin the Secretary of Treasury[2] from granting tax benefits to fraternal and nonprofit organizations which exclude nonwhites from membership.[3] Relief is sought on three separate counts: first, that various sections of the Internal Revenue

1. Section 144 of the Constitution and statutes of the Grand Lodge of the Benevolent and Protective Order of Elks provides in pertinent part that
 No person shall be accepted as a member of this Order unless he be a white male citizen of the United States of America . . .
 The By-laws and Rules of Order of Portland, Oregon, Lodge #142 conform to the National Constitution in Article II: Membership § 1:
 Applications for membership shall be received only from white male citizens of the United States of America . . .

2. Pursuant to Fed.R.Civ.P. 25(d) Secretary of the Treasury John Connally has been substituted as a party defendant.

3. Plaintiff seeks to enjoin the Internal Revenue Service from further approval of applications by segregated nonprofit clubs and fraternal orders for tax exempt status under Int.Rev.Code § 501(c) (7) & (8); allowing deduction for income tax purposes of contributions to these groups under Int.Rev.Code §§ 170(c) (4) and 642(c); requiring the revocation of tax exemptions previously issued such groups; and requiring the promulgation

Code are unconstitutional to the extent that they authorize benefits under the income, estate, and gift taxes; second, that the Internal Revenue Code does not authorize such benefits;[4] and third, that such benefits are a form of federal financial assistance in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Defendant now moves to dismiss the complaint on both jurisdictional grounds and for failing to state a claim upon which relief can be granted.

### I. *Jurisdiction*

### A. *Three-Judge Court*

We must first assess defendant's contention that 28 U.S.C. § 2282[5] does not authorize a three-judge court because the claim of unconstitutionality of the statute is not substantial,[6] and because plaintiff's attack is not upon the statute but upon the regulations and administrative action thereunder. See Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 113–116 (2nd Cir.), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L. Ed.2d 130 (1966).

of regulations prohibiting the granting of tax exempt status to any segregated nonprofit club or fraternal order. Plaintiff requests similar relief with respect to Int.Rev.Code §§ 2055, 2106(a) and 2522 which provide for deductibility of contributions for estate and gift tax purposes.

4. The pertinent sections of the Internal Revenue Code are set out in the appendix to this opinion.

5. 28 U.S.C. § 2282 provides:
 An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

6. *See, e. g.,* Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Brotherhood of Locomotive Firemen & Enginemen v. Certain Carriers, 118 U.S.App. D.C. 100, 331 F.2d 1020 (1964).

■ Section 2282 does not apply to suits seeking injunctions against administrative action, as distinguished from Acts of Congress. William Jameson & Co. v. Morgenthau, 307 U.S. 171, 173–174, 59 S.Ct. 804, 83 L.Ed. 1189 (1939). The Supreme Court has been less than clear in indicating how this distinction is to be determined in practice, particularly where the complaint is two-pronged, charging that the statute is unconstitutional and, in the alternative, that administrative action is beyond the authority granted by the statute. *See* Currie, The Three Judge Court in Constitutional Litigation, 32 U. Chi. L. Rev. 1, 37–55 (1964).

The Second Circuit has suggested in *Sardino, supra,* that the three-judge court procedure is not required where an Act of Congress confers authority on an administrator in general terms which could be read either to embrace or to exclude the challenged action, and the application of the statute is clearly constitutional in certain cases but arguably not so in the administrative scheme under attack.[7]

While this interpretation of § 2282 would appear to impose a sensible limitation on the use of an admittedly cumbersome procedure, recent Supreme Court decisions foreclose that course. In both Zemel v. Rusk [8] and Flast v. Cohen [9] the Court upheld the jurisdiction of three-judge courts on facts virtually indistinguishable from those in the present case.[10]

■ We understand these decisions to require the convening of a three-judge

---

7. Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 115 (2nd Cir.), *cert. denied,* 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966).

8. 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1964).

9. 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

10. In Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1964), appellant claimed that either the Secretary of State's order restricting travel to Cuba was not supported by the authority granted him by Congress, or that the statute granting that authority was unconstitutional. Despite the generality of the challenged statute—"The Secretary of State may grant and issue passports . . under such rules as the President shall designate . . . ."—the Court held that a three-judge court was properly convened. Since the constitutional attack upon the statute was substantial, "the joining in the complaint of a nonconstitutional attack along with the constitutional one does not dispense with the necessity to convene such a court." *Id.* at 6, 85 S.Ct. at 1275 (citations omitted).

In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), appellant challenged the constitutionality of Titles I and II of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 241a et seq., which provided, *inter alia,* for financial aid to private elementary and secondary schools. The act at no point expressly authorized aid to religious and sectarian schools, and appellant explicitly disclaimed the intent to challenge programs under the Act other than those providing aid to religious and sectarian schools. As here, "[t]he complaint asked for a declaration that appellees' actions in approving the expenditure of federal funds for the alleged purposes were not authorized by the Act or, in the alternative, that if appellees' actions are deemed within the authority of the Act, 'the Act is to that extent unconstitutional and void.'" *Id.* at 87, 88 S.Ct. at 1946. The Court rejected the Government's contention that "a three-judge court should not have been convened because appellants question[ed] not the constitutionality of the [Act] but its administration." *Id.* at 90, 88 S.Ct. at 1947.

> The decision in Zemel v. Rusk, 381 U.S. 1 [85 S.Ct. 1271, 14 L.Ed.2d 179] (1965), is dispositive on this issue. It is true that appellants' complaint states a nonconstitutional ground for relief, namely, that appellees' actions in approving the expenditure of federal funds for allegedly unconstitutional programs are in excess of their authority under the Act. However, the complaint also requests an alternative and constitutional ground for relief, namely, a declaration that, if appellees' actions "are within the authority and intent of the Act, the Act is to that extent unconstitutional and void." The Court noted in Zemel v. Rusk, supra, "[W]e have often held that a litigant need not abandon his nonconstitutional arguments in order to obtain a three-judge court."

*Id.* at 90–91, 88 S.Ct. at 1947.

court—even where the attack is on the constitutionality of the statute as applied and coupled with a claim that the action in question was not authorized by the statute—where the constitutional claim is itself substantial.[11] We find that plaintiff's constitutional claims are substantial, *see* Part IIA *infra*, and that a three-judge court was properly convened.

### B. *Standing*

Defendant next contends that plaintiff lacks standing to challenge the constitutionality of the statutes in question. The Supreme Court has recently clarified this troubled area,[12] setting forth a two-part test for standing: 1) for purposes of the case or controversy requirement of Article III it must appear "that the challenged action has caused injury in fact, economic or otherwise;"[13] and 2) as a matter of judicial self-restraint, the court must determine "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."[14]

Plaintiff alleges two injuries as a result of the tax benefits in question: First, that the funds generated by such tax benefits enable segregated fraternal orders to maintain their racist membership policies; and second, that such benefits constitute an endorsement of blatantly discriminatory organizations by the Federal Government. We find both these allegations of injury sufficient to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."[15] Just as "[a] person or family may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and Free Exercise Clause,"[16] so a black American has standing to challenge a system of federal support and encouragement of segregated fraternal organizations.[17]

### C. *Jurisdiction Under the Declaratory Judgment and Tax Injunction Acts*

Defendant relies upon the provision of the Declaratory Judgment Act, 28 U.S.C. § 2201, which specifically excepts suits "with respect to Federal taxes" from its coverage.[18] In our view, the

11. We recognize, as Judge Friendly pointed out in *Sardino*, 361 F.2d at 115, that this will require the three-judge court procedure in exactly those situations where the court would be particularly anxious to avoid the constitutional question by construing the statute as not authorizing the administrative action in question. *Compare* Green v. Kennedy, 309 F.Supp. 1127 (D.D.C.1970) *with* Green v. Connally, 330 F.Supp. 1150 (D.D.C.1971), *aff'd sub nom.*, Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971) (mem.)

12. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

13. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

14. *Id.* at 153, 90 S.Ct. at 830.

15. *Id.* at 151–152, 90 S.Ct. at 829 citing Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

16. *Id.* at 154, 90 S.Ct. at 830.

17. Although decided before *Association* and *Barlow*, we find the opinion in Green v. Kennedy, *supra* note 11, directly on point. Dealing with the application of essentially the same statutes to private academies in Mississippi, the court found "standing to attack the consitutionality of statutory provisions which [plaintiffs'] claim provided an unconstitutional system of benefits and matching grants that fosters and supports a system of segregated private schools . . ." 309 F.Supp. at 1132. As in *Green*, we need not reach plaintiff's contention that he has standing as a taxpayer.

18. The Act provides:
In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes,* any court of the United States, upon the filing of an appropriate

scope of this exception is coterminous with the breadth of the Tax Injunction Act, 26 U.S.C. § 7421(a),[19] which forbids enjoining the collection or assessment of any tax. As originally passed in 1935,[20] the Declaratory Judgment Act did not contain the present exception for Federal taxes. The exception was added the following year[21] for the explicit purpose of limiting the jurisdiction of the courts to issue declaratory judgments in the same fashion as their general jurisdiction was limited by the Tax Injunction Act.[22] If the injunctive relief requested by plaintiff is barred by the Tax Injunction Act so too will relief be barred by the Declaratory Judgment Act.[23]

In Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court stated that

[t]he manifest purpose of § 7421(a) is to permit the United States to as-

sess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for a refund. In this manner the United States is assured of prompt collection of its lawful revenue.

*Id.* at 7, 82 S.Ct. at 1129. Thus understood, § 7421(a) ensures that the assessment and collection of taxes follows the procedure prescribed by the Internal Revenue Code. Objections, even on constitutional grounds, are to be determined in a suit for refund.[24]

■ Plaintiff's action has nothing to do with the collection or assessment of taxes. He does not contest the amount of his own tax,[25] nor does he seek to limit the amount of tax revenue collectible by the United States. The preferred course of raising his objections in a suit for refund is not available. In this situation we cannot read the statute to bar

pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. (emphasis added)

19. 26 U.S.C. § 7421 provides in pertinent part:
(a) *Tax*— . . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax is assessed.

20. Act of June 14, 1934, 48 Stat. 955.

21. Act of August 30, 1935, 49 Stat. 1027.

22. The report of the Senate Finance Committee on the Revenue Bill of 1935 reads as follows:
. . . [T]he application of the Declaratory Judgment Act to taxes would constitute a radical departure from the long continued policy of Congress (as expressed in Rev.Stat. 3224 and other provisions) with respect to the determination, assessment and collection of federal taxes.
Your Committee believes that the orderly and prompt determination and collection of federal taxes should not be interfered with by a procedure designed to facilitate the settlement of

private controversies, and that the existing procedure both in the Board of Tax Appeals and the courts affords ample remedies for the correction of tax errors.
S.Rep.No.1240, 74th Cong., 1st Sess 11 (1935). Rev.Stat. 3224 is the lineal ancestor of the present 26 U.S.C. § 7421(a). *See generally,* E. Borchard, Declaratory Judgments, 850–57 (2nd Ed. 1941).

23. *See* Jules Hairstylists of Maryland v. United States, 268 F.Supp. 511 (D.Md.), *aff'd,* 389 F.2d 389 (4th Cir.), *cert. denied,* 391 U.S. 934, 88 S.Ct. 1847, 20 L.Ed.2d 854 (1968); Tomlinson v. Smith, 128 F.2d 808 (7th Cir. 1942).

24. *See, e. g.,* Dodge v. Osborne, 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557 (1916); Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 (1922).

25. The addition of the words "whether or not such person is the person against whom such tax was assessed" to 26 U.S.C. § 7421(a) by the Federal Tax Lien Act of 1966, Pub.L. 89–719, 80 Stat. 1142, was designed to deal with the narrow problem of the third party who held a lien which competed with the tax lien held by the Government, *see, e. g.,* Pettengill v. United States, 205 F.Supp. 10 (D.Vt.1962). While cutting off this route to relief for such third parties, the Tax Lien Act added what is now 26 U.S.C. § 7426 which provides for such suits.

the present suit. To hold otherwise would require the kind of ritualistic construction which the Supreme Court has repeatedly rejected. Even where the particular plaintiff objects to his own taxes, the Court has recognized that the literal terms of the statute do not apply when "the central purpose of the Act is inapplicable." [26] In the present case, the central purpose is clearly inapplicable. It follows that neither § 7421(a) nor the exception to the Declaratory Judgment Act prohibits this suit.[27]

## II. Failure to State a Claim Upon Which Relief Can Be Granted

As noted above, plaintiff advances three separate theories in support of his right to relief. He challenges the constitutionality of the statute if, and to the extent that, it authorizes the grant of tax exempt status to nonprofit clubs and fraternal orders, and makes deductible contributions to such fraternal orders. He alternatively claims that the Internal Revenue Code does not authorize the deductibility of contributions to fraternal orders. Finally, plaintiff claims that both exemption from taxation and deductibility of contributions are federal financial assistance in violation of Title VI of the Civil Rights Act of 1964. Since a motion to dismiss for failure to state a claim tests the legal suffi-

ciency of each count of the complaint, we must consider the counts separately.

### A. Constitutionality of Federal Tax Benefits to Segregated Organizations

Better than one hundred years ago, this country sought to eliminate race as an operative fact in determining the quality of one's life. The decision has yet to be fully implemented. As Mr. Justice Douglas has pointedly stated: "Some badges of slavery remain today. While the institution has been outlawed, it has remained in the minds and hearts of many white men." [28] The minds and hearts of men may be beyond the purview of this or any other court; perhaps those who cling to infantile and ultimately self-destructive notions of their racial superiority cannot be forced to maturity. But the Fifth and Fourteenth Amendments do require that such individuals not be given solace in their delusions by the Government. Nor is this emphasis on the conduct of the Government misplaced. "Government is the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct. Therefore something is uniquely amiss in a society where the government, the authoritative oracle of community values, involves itself in ra-

**26.** Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962); see, e. g., Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932); Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932); Allen v. Regents, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448 (1938).

**27.** Nor does the doctrine of sovereign immunity bar this suit. Plaintiff's action falls readily within the two longstanding exceptions to that doctrine. His claims that the benefits in question are not authorized by the Internal Revenue Code, and that such benefits are in violation of Title VI of the 1964 Civil Rights Act, are allegations of "action by officers beyond their statutory powers." Dugan v. Rank, 372 U.S. 609, 621–622, 83 S.Ct. 999, 1007, 10 L.Ed.2d 15 (1963). His

claim that the benefits, if authorized, are unconstitutional, is a claim that "the powers themselves or the manner in which they are exercised are constitutionally void." Id.

In Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971) (mem.) aff'g Green v. Connally, supra note 11, the Supreme Court sustained the imposition of the relief sought here against the same officers. Since the defense of sovereign immunity is jurisdictional, see, e. g., United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); United States v. Griffin, 303 U.S. 226, 58 S.Ct. 601, 82 L.Ed. 764 (1938), summary disposition does not deprive the case of its significance.

**28.** Jones v. Alfred H. Mayer Co., 392 U.S. 409, 445, 88 S.Ct. 2186, 2206, 20 L.Ed.2d 1189 (1968) (Douglas, J. concurring).

cial discrimination." [29] Where that involvement is alleged, the courts have exercised the most careful scrutiny to ensure that the State lives up to its own promise.

Here plaintiff challenges the constitutionality of various provisions of the Internal Revenue Code to the extent that they authorize the grant of Federal tax benefits to organizations which exclude nonwhites from membership. These provisions exempt from income taxation nonprofit clubs (§ 501(c) (7)) and fraternal orders (§ 501(c) (8)) and make individual contributions to such fraternal orders deductible for income, estate, and gift taxes if the contributions are used "exclusively for religious, charitable, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals." §§ 170(c) (4), 642(c), 2055, 2106(a), 2522. Plaintiff's claim thus leads us into the murky waters [30] of the "state action" doctrine, for we must determine whether by granting tax benefits to private organizations which discriminate on the basis of race in membership, the Federal Government has supported or encouraged private discrimination so as to have it-

self violated plaintiff's right to the equal protection of the laws.

While a century ago, the phrase "state action" [31] may have sufficiently demarcated the extent of lawful state participation in private discrimination, that clarity has long since vanished in the wake of the greatly expanded role of government in a modern, industrial society. Whether by licensing,[32] contract,[33] or tax,[34] few activities are left wholly untouched by the arm of Government. The responsibilities of the Government under the Fifth and Fourteenth Amendments, however, are not diluted by the expanded scope of Government,[35] and our inquiry has become necessarily more detailed. "[O]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

1. *The Deductibility of Contributions to Fraternal Orders.*

To demonstrate the unconstitutionality of the challenged deductions plaintiff must, of course, show that they in fact aid, perpetuate, or encourage racial dis-

29. Adickes v. S. H. Kress & Co., 398 U.S. 144, 190–191, 90 S.Ct. 1598, 1620, 26 L.Ed.2d 142 (1970) (Brennan, J. concurring in part and dissenting in part).

30. The wealth of scholarly concern visited on this area attests to the difficulties the courts have encountered. *See e. g.*, Lewis, The Meaning of State Action, 60 Col.L.Rev. 1083 (1960); Henkin, Shelley v. Kramer: Notes for a Revised Opinion, 110 U.Pa.L.Rev. 473 (1962); Lewis, The Sit-In Cases: Great Expectations, 1963 Supreme Court Rev. 101 (1963); Paulsen, The Sit-In Cases of 1964: "But Answer Came There None," 1964 Supreme Court Review 137 (1964); Black, Foreword: State Action, Equal Protection, and California's Proposition 14, 81 Harv. L.Rev. 69 (1968).

31. Since the grant of tax benefits is certainly an act of the state, it might be more accurate to state the question as whether the act of exemption violates the Fifth Amendment. *Cf.* Reitman v. Mulkey, 387 U.S. 369, 392, 87 S.Ct. 1627, 18 L.Ed.2d 830 (Harlan, J. dissenting).

Nonetheless, the determination of when state involvement is sufficient either to bring otherwise private discrimination within the aegis of the Fifth or Fourteenth Amendment, or to evoke a duty on the part of the government to prevent that discrimination, has traditionally been styled one of "state action." Little clarity is gained at this stage by attaching a different label to the same inquiry depending on who is the defendant.

32. *See* Irvis v. Scott, 318 F.Supp. 1246 (M.D.Pa.1970), *prob. juris. post. until merits*, Moose Lodge No. 107 v. Irvis, 401 U.S. 992, 91 S.Ct. 1236, 28 L.Ed.2d 529 (1971).

33. *See* Ethridge v. Rhodes, 268 F.Supp. 83 (S.D.Ohio, 1967); *cf.* Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

34. See Green v. Kennedy, *supra* note 11; Pitts v. Dept. of Revenue, 333 F.Supp. 662 (E.D.Wis.1971).

35. *See* cases cited notes 32–34 *supra*.

crimination.[36] He alleges, subject to proof at trial, both the substantiality of the benefits provided[37] and a causal relation to the discrimination practiced by the segregated organizations.[38] But more is required to find a violation of the Constitution. Every deduction in the tax laws provides a benefit to the class who may take advantage of it. And the withdrawal of that benefit would often act as a substantial incentive to eliminate the behavior which caused the change in status. Yet the provision of an income tax deduction for mortgage interest paid[39] has not been held sufficient to make the Federal Government a "joint participant"[40] in the bigotry practiced by a homeowner. An additional line of inquiry is essential, one considering the nature of the Government activity in providing the challenged benefit and necessarily involving the sifting and weighing prescribed in *Burton*.[41]

The rationale for allowing the deduction of charitable contributions has historically been that by doing so, the Government relieves itself of the burden of meeting public needs which in the absence of charitable activity would fall on the shoulders of the Government.

"The Government is compensated for its loss of revenue by its relief from financial burdens which would otherwise have to be met by appropriations from public funds." H.Rep. No. 1860, 75th Cong., 3rd Sess. 19 (1938). And here the Government does more than simply authorize deduction of contributions to any cause which the individual taxpayer deems charitable. The statute, regulations, and administrative rulings thereunder, define in extensive detail not only the purposes which will satisfy the statute, but the *vehicles* through which those purposes may be achieved as well. A contribution, even for an approved purpose, is deductible *only* if made to an organization of the type specified in § 170 and which has obtained a ruling or letter of determination from the Internal Revenue Service. Thus the government has marked certain organizations as *"Government Approved"* with the result that such organizations may solicit funds from the general public on the basis of that approval.

In our view, the Government has become sufficiently entwined with private parties to call forth a duty to ensure compliance with the Fifth Amendment by the parties through whom it

---

36. Evans v. Abney, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1969); Palmer v. Thompson, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971).

37. There is no question that allowing the deduction of charitable contributions in fact confers a benefit on the organization receiving the contribution. The court in Green v. Kennedy, *supra* note 11, described "the impact of Federal tax . . deduction" as a "matching grant," *id.* at 1136, and we agree. *See generally*, Surrey, Tax Incentives as a Device for Implementing Government Policy: A Comparison with Direct Government Expenditures, 83 Harv.L.Rev. 705 (1970); Surrey, Federal Income Tax Reforms: The Varied Approaches Necessary Replace Tax Expenditures with Direct Governmental Assistance, 84 Harv.L.Rev. 352 (1970); Stone, Federal Tax Support of Charities and Other Exempt Organizations: The Need for a National Policy, 20 So.Calif. Tax Instit. 27 (1968).

38. We do not find it significant that plaintiff does not allege, as was the case in Green v. Kennedy, supra note 11, that the charitable purposes to which the federal funds are put are in themselves discriminatory. Plaintiff alleges that he and others in his position are denied the opportunity to help determine the purposes to which the funds are devoted. Paternalism should not be confused with equality.

39. Int.Rev.Code § 163.

40. Burton v. Wilmington Parking Authority, *supra* note 33 at 725 of 365 U.S., 81 S.Ct. 856.

41. We note that Judge Freedman, writing for a three-judge court in Irvis v. Scott, *supra* note 32, adopted a similar approach in considering the types of state licensing schemes sufficient to constitute state action. *Id.* at 1250.

chooses to act.[42] We see no difference in the degree to which the Government has "place[d] its power, property and prestige behind the admitted discrimination," Burton v. Wilmington Parking Authority, *supra*, at 725, 81 S.Ct. at 862, where a private restaurant in a government owned parking facility refuses service to black patrons, and where a tax supported organization by its constitution admits only "white male citizens." [43]

The public nature of the activity delegated to the organization in question, the degree of control the Government has retained as to the purposes and organizations which may benefit, and the aura of Government approval inherent in an exempt ruling by the Internal Revenue Service, all serve to distinguish the benefits at issue from the general run of deductions available under the Internal Revenue Code. Certain deductions provided by the Code do not act as matching grants, but are merely attempts to provide for an equitable measure of net income.[44] Others are simply part of the structure of an income tax based on ability to pay.[45] We recognize that an additional class of deductions—such as accelerated depreciation for rehabilitated low income rental property,[46] or deductions for mortgage interest [47]—do act as "incentives" favoring certain types of activities. But unlike the charitable deductions before us, these provisions go no further than simply indicating the activities hoped to be encouraged; they do not expressly choose fraternal organizations as a vehicle for that activity and do not allow such organizations to represent themselves as having the imprimatur of the Government. This seems to us a significant difference of degree in an area where no bright-line rule is possible.

2. *The Exemption From Income Tax For Nonprofit Clubs and Fraternal Orders.*

The exemptions from income taxation for nonprofit clubs (§ 501(c) (7)) and fraternal orders (§ 501(c) (8)) present more difficult problems. Because their tax treatment is not identical, we consider the exemptions for the two types of groups separately.

*Nonprofit Clubs*

Plaintiff's claim of unconstitutional aid to private discrimination rests on the following syllogism: Since the Government imposes a tax on all income, § 61(a), and then exempts from taxation the income of nonprofit clubs, an affirmative benefit or subsidy has been provided the exempted groups. After the Tax Reform Act of 1969,[48] the treatment of exempt nonprofit clubs is that *all* their income, including passive in-

---

42. Having found the necessary involvement, the Court in *Burton* described the duty imposed on the state:

> [I]n its lease with Eagle the Authority could have affirmatively required Eagle to discharge the responsibilities under the Fourteenth Amendment imposed upon the private enterprise as a consequence of state participation. But no state may abdicate its responsibilities by either ignoring them or by failing to discharge them whatever the motive may be . . . . By its inaction, the Authority, and through it the State, . . . has elected to place its power, property and prestige behind the admitted discrimination.

Burton v. Wilmington Parking Authority, *supra* note 33, at 725, 81 S.Ct. at 861.

43. *See* Pitts v. Department of Revenue, *supra* note 34. The court there held that the grant of exemption from property taxation to organizations which discriminate on the basis of race in their membership violates the Fourteenth Amendment. The statute in question, Wis.Stat. § 70.11(4), made exemption available only to particular organizations, and the parties agreed "that the exemptions are granted on the reasoning that the organizations benefitted serve a public purpose." *Id.* at note 10.

44. *E. g.*, Int.Rev.Code §§ 162 (deductibility of trade or business expenses); 172 (net operating loss carryovers and carrybacks); 1301-05 (income averaging).

45. *E. g.*, Int.Rev.Code § 151 (personal exemptions).

46. Int.Rev.Code § 167(k).

47. Int.Rev.Code § 163.

48. Pub.L. 91-172.

vestment income, *is taxed* at regular corporate rates.[49] They are, however, allowed the equivalent of a deduction for "exempt function income," [50] defined essentially as income derived from members.[51] It is therefore this deduction which provides the allegedly unconstitutional aid.

Unlike the deduction for charitable contributions, the deduction for "exempt function income" does not operate to provide a grant of federal funds through the tax system. Rather, it is part and parcel of defining appropriate subjects of taxation. Congress has determined that in a situation where individuals have banded together to provide recreational facilities on a mutual basis, it would be conceptually erroneous to impose a tax on the organization as a separate entity. The funds exempted are received only from the members and any "profit" which results from overcharging for the use of the facilities still belongs to the same members. No income of the sort usually taxed has been generated; the money has simply been shifted from one pocket to another, both within the same pair of pants. Thus the exclusion of member generated revenue reflects a determination that as to these funds the organization does not operate as a separate entity.[52]

 That the Government provides no monetary benefit does not, however, insulate its involvement from constitutional scrutiny. The lease in *Burton* was, as far as the record shows, entirely arm's length with no provision of federal property at less than market value. Encouragement of discrimination through the appearance of governmental approval may also be sufficient involvement to violate the Constitution. But here the necessary involvement is not readily apparent. Section 501(c) (7) does not limit its coverage to particular activities; exemption is given to "[c]lubs organized and operated exclusively for pleasure, recreation *and other nonprofitable purposes* . . . ." (emphasis added.) Thus there is no mark of Government approval inherent in the designation of a group as exempt. Congress has simply chosen not to tax a particular type of revenue because it is not within the scope sought to be taxed by the statute. And however dysfunctional the "state action" limitation is at a time when the nation has sufficiently matured that the elimination of racial discrimination is a cornerstone of national policy, it still means that Congress does not violate the Constitution by *failing to tax* private discrimination where there is no other act of Government involvement. To find a violation solely from the State's failure to act would, however laudably, eliminate the "state action" doctrine and that must come from the Supreme Court.[53] The motion

---

49. Prior to the Tax Reform Act, passive investment income—income derived from securities, interest bearing bank accounts, etc.—was not considered an "unrelated business activity" and was not taxed even to organizations subject to the unrelated business activity tax. As amended, § 501 exempts nonprofit clubs from taxation other than that imposed at corporate rates on unrelated business income by § 511. Section 512(a) (3) (A) defines the unrelated business income of § 501(c) (7) nonprofit clubs as their "gross income," thereby including passive investment income.

50. Int.Rev.Code § 512(a) (3) (A).

51. Int.Rev.Code § 512(a) (3) (B).

52. See H.Rep.No.413, 91st Cong., 1st Sess. 48 (1969) ; S.Rep.No.552, 91st Cong.,

1st Sess. 71 (1969), U.S.Code Cong. & Admin.News 1969, p. 1645.

53. Ultimately, the "state action" doctrine is premised on a construction of the Fourteenth Amendment which, to borrow language written by Justice Frankfurter in another context, is "a return to Year Book distinctions between feasance and nonfeasance—a distinction that may have significance in the evolution of common-law notions of liability, but is inadmissible as a line between constitutionality and unconstitutionality." Lambert v. California, 355 U.S. 225, 231, 78 S.Ct. 240, 244, 2 L.Ed.2d 228 (1957) (Frankfurter, J., dissenting). The difficulty is that the doctrine is a poor statement of the values which should underlie the Amendment's jurisprudence. The Amendment defines the responsibility of the State to eliminate

to dismiss is granted as to the claim that the exemption for § 501(c) (7) nonprofit clubs violates the Constitution.[54]

### Fraternal Orders

The exemption given to fraternal organizations under § 501(c) (8) stands on different footing. Unlike nonprofit clubs, fraternal organizations are taxed only on "unrelated business taxable income" defined as "any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for the exemption under section 501 . . ."[55] The crucial impact of this differential treatment is that the passive investment income of fraternal orders is not taxed.[56] This exemption cannot be explained simply by the inappropriateness of taxing the organization as a separate entity in this situation. Here individuals are provid-

ing funds which are then invested for the purposes of benefiting the contributing members, and the exemption of this income is a "benefit" provided by the Government.[57]

We think this exclusion, provided only to particular organizations with particular purposes, rather than across the board, is sufficient government involvement to invoke the Fifth Amendment. By providing differential treatment to only selected organizations, the Government has indicated approval of the organizations and hence their discriminatory practice, and aided that discrimination by the provision of federal tax benefits.[58]

### B. Claim that the Internal Revenue Code Does Not Authorize the Deductibility of Contributions to Segregated Fraternal Organizations.

Plaintiff also alleges that the deductibility of contributions to fraternal organizations which exclude nonwhites from membership is not authorized by the Internal Revenue Code.[59] Contribu-

---

racial discrimination. And surely the notion that not all acts of "private discrimination" were intended to be covered by the Amendment does not reflect any "right" of the *state* not to act. A more accurate statement of the values limiting the state's responsibility would be the right of the individual who chooses to discriminate to his associations and his privacy. See the sources cited in note 30, *supra*. Such a reformulation is crucial to the final achievement of the noble purpose of the Amendment.

54. *Compare* Pitts v. Department of Revenue, *supra* note 34. The exemptions from state income tax in that case covered *all* income, *see* pages 457–458, *supra*, and were granted on the premise that the organizations exempted "serve a public purpose." *Id.* at note 10.

55. Int.Rev.Code § 513(a).

56. *See* S.Rep., *supra* note 52 at 72. While this income was taxed under the House bill, it was eliminated by both the Senate and the Conference Committee. Conf. Rep.No.782, 91st Cong. 1st Sess. 291 (1969).

57. *See* H.Rep., *supra* note 52; S.Rep., *supra* note 52.

58. Defendant's reliance on Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) for the proposition that tax exemptions provide insufficient Government involvement to violate the Constitution is misplaced. The holding in *Walz* was that exemption of church property from state property tax did not violate the First Amendment Establishment Clause. As such, it was premised on historical considerations peculiar to the First Amendment:

> Few concepts are more deeply imbedded in the fabric of our national life, beginning with pre-Revolutionary colonial times, than for the government to exercise at the very least this kind of benevolent neutrality toward churches and religious exercise generally. . . .

397 U.S. at 676, 90 S.Ct. at 1415. The history of the Fourteenth Amendment leads in exactly the opposite direction. It was designed explicitly to deal with the cancer of racial discrimination and a *strict* rather than *benevolent* neutrality is required on the part of Government. *See* Green v. Connally, *supra* note 11, at 1163–1164 of 330 F.Supp.

59. Under Count 3 of the complaint, unlike the other counts, Plaintiff attacks only the deductibility of contributions and not the

tions to fraternal organizations exempt under § 501(c) (8) are deductible under §§ 170(c) (4), 642(c), 2055, 2106(a), and 2522, if used exclusively for the purposes there listed. Plaintiff argues that because such contributions also perpetuate the existence of an organization which discriminates on the basis of race, the exclusivity requirement is not satisfied.

Only recently a three-judge court of this District considered the application of the statutes in question to the benefits granted to segregated private schools. Green v. Connally, 330 F.Supp. 1150 (D.D.C.1971), aff'd sub nom. Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971) (mem.). The Court there held that since "the Congressional intent in providing tax deductions and exemptions is not construed to be applicable to activities that are either illegal or against public policy," [60] the overwhelming federal policy against segregated education required that the Internal Revenue Code "no longer be construed so as to provide private schools operating on a racially discriminatory premise the support of the exemptions and deductions which Federal tax law affords to charitable organizations and their sponsors." [61]

██ In Green, the Court felt its construction of the Code was "underscored by the fact that it obviates the need to determine . . . serious constitutional claims." [62] Since the constitutional claim here, unlike in Green,[63] was challenged by a motion to dismiss, and since we therefore cannot avoid plaintiff's serious constitutional claim, we have already determined that the tax deductions in question, if authorized, would violate the Fifth Amendment.[64] As such, we would be bound to interpret the Code as not allowing the deduction of contributions to segregated fraternal orders. We

do not think, however, that the correctness of that construction depends on the finding of state action which underlies our constitutional determination. The Thirteenth Amendment clothed "Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States," *Civil Rights Cases*, 109 U.S. 3, 20, 3 S.Ct. 18, 28, 27 L.Ed. 835 (1883), and that expression of constitutional concern has been held to include acts of private discrimination. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L. Ed.2d 1189 (1968). Further, in what we find an analogous area, Congress, by Section 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, has provided that racial discrimination cannot be practiced by those receiving "federal financial assistance." Whether or not tax benefits of the sort at issue here are "federal financial assistance" within the terms of the Civil Rights Act, *see* Part IIC *infra*, there is a clearly indicated Congressional policy that the beneficiaries of federal largesse should not discriminate. We think this overriding public policy, even in the absence of our constitutional holding in Part IIA, requires that the Code not be construed to allow the deduction of contributions to organizations which exclude nonwhites from membership.

### C. Claim Under the 1964 Civil Rights Act

Plaintiff's final allegation is that the granting of federal tax benefits to organizations which exclude nonwhites from membership is a form of "federal financial assistance" in violation of 42 U.S.C. § 2000d which provides that:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits

tax exempt status of the organizations themselves.

60. 330 F.Supp. at 1161.

61. Id. at 1164.

62. Id. at 1165.

63. *Green* was before the court on a motion for preliminary injunction, Green v. Kennedy, *supra* note 11, and on the granting of permanent relief, Green v. Connally, *supra* note 11.

64. See Part IIA *supra*.

of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Section 602, 42 U.S.C. § 2000d–1 defines "federal financial assistance" as "assistance to any program or activity, by way of *grant, loan, or contract other than a contract of insurance or guaranty.*" (emphasis added). The apparently standard regulation issued by federal agencies pursuant to § 2000d–1 reads:

> The term "federal financial assistance" includes (1) grants and loans of Federal funds, (2) the grant or donation of Federal property and interests in property, (3) the detail of Federal personnel, (4) the sale and lease of, and the permission to use (on other than a casual or transient basis), Federal property or any interest in such property without consideration or at a nominal consideration, or at a consideration which is reduced for the purpose of assisting the recipient, or in recognition of the public interest to be served by such sale or lease to the recipient, and (5) any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance.[65]

Plaintiff contends that since "federal financial assistance" has been construed to cover such indirect forms of aid as the detail of federal personnel, or the sale of property at a reduced consideration, it must necessarily cover the provision of similar aid through the income, estate, and gift taxes which, if direct, would certainly be covered by the statute. Nothing in the massive legislative history of the 1964 Civil Rights Act sheds any light on whether assistance provided through the tax system was intended to be treated differently than assistance provided directly.

■ In the absence of strong legislative history to the contrary, the plain purpose of the statute is controlling. Here that purpose is clearly to eliminate discrimination in programs or activities benefitting from federal financial assistance. Distinctions as to the method of distribution of federal funds or their equivalent seem beside the point, as the regulations issued by the various agencies make apparent.

Defendant's only argument as to why the Act should be construed to exclude from its coverage assistance plainly within its purpose, is that otherwise any deduction provided under the Internal Revenue Code becomes a potential vehicle for a suit against the Internal Revenue Service under Title VI. We have already indicated, however, that the deductions provided in the Code are not all cut from the same cloth.[66] Most relate primarily to the operation of the tax itself, and thus would not constitute a grant of federal financial assistance. And where a Code provision does operate to provide such assistance, it is within the purpose of the statute and the possibility of litigation follows naturally.[67]

■ We hold that assistance provided through the tax system is within the scope of Title VI of the 1964 Civil Rights Act, and thus turn to the particular provisions challenged by Plaintiff.

---

65. *See, e. g.,* 7 C.F.R. § 15.2 (Department of Agriculture); 28 C.F.R. § 42.101 (Department of Justice); 45 C.F.R. § 80.13 (Department of Health, Education and Welfare).

66. *See* text at notes 37–41 *supra.*

67. Indeed the flood of litigation contemplated by defendant may have been considered by Congress. The great majority of incentives provided by the Code are quite naturally designed to benefit particular business activities. Here the civil rights complaint most likely to be raised is discrimination in employment. As to this, Congress has explicitly provided that:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to the employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

Section 604 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–3.

### 1. The Deductibility of Contributions to § 501(c) (8) Fraternal Orders

We think there is little question that the provision of a tax deduction for charitable contributions is a grant of federal financial assistance within the scope of the 1964 Civil Rights Act. "The charitable contribution deduction is a special tax provision not required by, and contrary to, widely accepted definitions of income applicable to the determination of the structure of an income tax." [68] It operates in effect as a Government matching grant [69] and is available only for the particular purposes and to the particular organizations outlined in the Code.[70] We see no difference between the provision of Federal property "at a· consideration which is reduced . . . in recognition of the public interest to be served by such sale or lease to the recipient," and a tax deduction in the form of a matching grant provided for contributions to causes deemed worthy by the Internal Revenue Code.

### 2. The Exemption from Income Tax for Nonprofit Clubs and Fraternal Orders

The tax exemptions provided nonprofit clubs and fraternal orders again raise more difficult problems. We have already indicated that the exemption of nonprofit clubs, limited as it is to member-generated funds and available regardless of the nature of the activity of the particular club, does not operate as a "grant" of Federal funds.[71] As such, the exemption does not come within the scope of the 1964 Civil Rights Act, and the motion to dismiss is granted as to this part of plaintiff's claim.

We have also indicated, however, that the exemption provided fraternal orders by § 501(c) (8) is of wider scope, shielding from taxation not only member-generated funds but passive investment income as well. Unlike the exemption for nonprofit clubs, it cannot be explained simply as a matter of pure tax policy.[72] Since it is available only to particular groups, it operates in fact as a subsidy in favor of the particular activities these groups are pursuing. It thus falls within the coverage of the Civil Rights Act.

### III. Conclusion

We have no illusion that our holding today will put an end to racial discrimination or significantly dismantle the social and economic barriers that may be more subtle, but are surely no less destructive. Individuals may retain their own beliefs, however odious or offensive. But the Supreme Court has declared that the Constitution forbids the Government from supporting and encouraging such beliefs. By eliminating one more of the "nonobvious involvement[s] of the State in private conduct," [73] we obey the Court's command to quarantine racism.

### APPENDIX: PERTINENT SECTIONS OF THE INTERNAL REVENUE CODE

SEC. 170. *Charitable, etc., contributions and gifts.*

(a) *Allowance of Deduction.—*

(1) *General rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

\*　　\*　　\*　　\*　　\*　　\*

---

68. Surrey, Federal Income Tax Reforms: The Varied Approaches Necessary to Replace Tax Expenditures with Direct Governmental Assistance, 84 Harv.L.Rev. 352, 384 (1970).

69. *See* note 37, *supra.*

70. *See* pp. 455–457, *supra.*

71. *See* pp. 457–459, *supra.*

72. *See* p. 459, *supra.*

73. Burton v. Wilmington Parking Authority, *supra* note 33, 365 U.S. at 722, 81 S.Ct. at 860.

(c) *Charitable Contribution Defined.*—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

\* \* \* \* \* \*

(4) In the case of a contribution or gift by an individual, a domestic fraternal society, order, or association, operating under the lodge system, but only if such contribution or gift is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals.

SEC. 501. *Exemption from tax on corporations, certain trusts, etc.*

(a) *Exemption From Taxation.*—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\* \* \* \* \* \*

(c) *List of Exempt Organizations.*—The following organizations are referred to in subsection (a):

\* \* \* \* \* \*

(7) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder.

(8) Fraternal beneficiary societies, orders, of associations—

(A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system, and

(b) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents.

SEC. 642. *Special rules for credits and deductions*

(c) *Deductions for Amounts Paid or Permanently Set Aside For a Charitable Purpose.*—

(1) *General Rule.*—In the case of an estate or trust . . . there shall be allowed as a deduction in computing its taxable income (in lieu of the deduction allowed by section 170(a) . . .) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid for a purpose specified in section 170(c). . . .

SEC. 2055. *Transfers for public, charitable and religious uses.*

(a) *In General.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

SEC. 2106. *Taxable estate.*

(a) *Definition of Taxable Estate.*—For purposes of the tax imposed by section 2101, the value of the taxable estate of every decedent nonresident not a citizen of the United States shall be determined by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States—

\* \* \* \* \* \*

(2) *Transfers for public, charitable, and religious uses.*—

(A) *In general.*—The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

\* \* \* \* \* \*

(iii) to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used within the United States by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, . . . . .

SEC. 2522. *Charitable and similar gifts.*

(a) *Citizens or Residents.*—In computing taxable gifts for the calendar year, there shall be allowed as a deduction in the case of a citizen or resident the amount of all gifts made during such year to or for the use of—

\* \* \* \* \* \*

(3) a fraternal society, order, or association, operating under the lodge system, but only if such gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; . . . .